BRADLEY AND OTHERS V. TOLSON AND OTHERS.

June 10, 1915.

1. FRAUD—*Reckless Misrepresentations.*—A reckless misrepresentation of fact, though made without actual knowledge of its falsity, constitutes a fraud, both at law and in equity.

2. CONTRACTS—*Fraud—Ratification—New Incidents of Fraud.*—A party who affirms a contract obtained by fraudulent representations after full knowledge of all the facts, except that the party who made the representations knew them to be false, is bound by his election and cannot thereafter disaffirm it. The subsequent discovery of the *scienter* of the party making the representation was at most merely a newly discovered incident or feature of the alleged fraud, sufficient to change in a degree the moral aspect of the case, but not to create any new right.

Appeal from a decree of the Circuit Court of Culpeper county. Decree for the complainant. Defendants appeal.

*Reversed.*

The opinion states the case.

*Keith & Richards* and *J. Stuart White,* for the appellants.

*William Horgan, J. G. Hiden* and *F. C. Brooke,* for the appellces.

KELLY, J., delivered the opinion of the court.

This suit in equity was brought by F. S. Tolson against Peter B. and Robert S. Bradley to recover compensation for a deficiency in acreage upon a purchase of land. The bill

alleges a purchase in gross, but charges that the contract in this respect was fraudulent. From a decree in Tolson's favor the Bradleys obtained this appeal.

The appellants were the owners of a farm in Culpeper county lying on both sides of a certain county road. They had owned this farm for a number of years but resided in Boston and had never seen the farm and had no accurate knowledge as to its acreage or how it was divided by the road. On July 4, 1907, one G. S. P. Triplett, who seems to have been renting or looking after the land for the Bradleys and who was thoroughly familiar with it, and who knew also that they wanted to sell it, entered into a written agreement with Tolson, which read as follows:

"I have this day agreed to sell as agent for Peter B. & Robert S. Bradley, of Boston, Mass., to F. S. Tolson, of Culpeper county, Virginia, that portion of their Greenfield farm that contains the buildings on the right hand side of the road from Ball's X Roads leading to Freeman's Ford on the Rappahannock river—supposed to contain 360 acres —for the sum of $5,250, payable on time as follows: Two thousand dollars cash on August 15, 1907, and five annual payments as follows—$650, each payable September 15, 1908-1909-1910-1911 and 1912, or five thousand dollars cash, the rate of interest to be 5% *per annum*, the deferred payments to be secured by deed of trust.

"The land to be surveyed and if it should fall short of 360 acres then a reduction will be made at the price paid per acre for the 360 acres. As witness our signatures this 4th day of July, 1907.

"PETER B. BRADLEY & ROBERT S. BRADLEY,
(Signed)    per G. S. P. Triplett, Agt.
(Signed)    F. S. TOLSON."

On the same day, July 4, 1907, Tolson wrote to the Bradleys informing them of the contract he had made with Triplett, referring specially to the terms of payment and adding, "I have agreed to buy the farm but reserve the right to choose either of the propositions between now and August 15, 1907. I would like very much to see one of you beforehand and will meet either of you in Philadelphia. Please let me hear from you at once." The Bradleys replied confirming the sale, and a meeting was later on, at Tolson's request, arranged for and held in New York on August 13, 1907, between him and Peter B. Bradley. At that meeting the terms of the contract were changed so as to give Tolson better terms of payment, and so as to eliminate the provision for a survey and to provide in lieu thereof for a sale in gross and not by the acre. Shortly after Tolson's return to Virginia he wrote Peter B. Bradley asking him to send all necessary papers to Judge C. M. White at the earliest convenience, so as to close the matter up. This request was complied with, the papers being sent to Judge White, who prepared a deed, dated September 10, 1907, which was duly executed by the Bradleys and which described the land as being that part of the farm on the right hand side of the road, "supposed to contain 360 acres, be the same more or less, it being sold in gross and not by the acre."

Early in 1910 Tolson sold a part of this land to raise some of the money due the Bradleys, and upon a survey then made to lay off the portion sold it was discovered that the boundary contained 295 instead of 360 acres. Thereupon, under date of February 4, 1910, Tolson wrote Peter B. Bradley telling him of the discovery and using this language: "However, not meaning to back down from my agreement but owing to the misrepresentation in the place by Mr. Triplett, I as well as yourself was led to understand the place conveyed to me contained somewhere near 360 acres, but upon surveying I find a shortage of 65

acres. Now, I bought the place in gross and it is left entirely with you whether you see fit to do further anything to remedy the shortage of 65 acres which falls to me, but if you do not see fit to do anything further to help me in this matter I am ready to settle as soon as the bond is sent to Judge White." Peter B. Bradley replied, expressing in his letter surprise and regret at the deficiency, but adding that under the circumstances they did not feel that they could make "any further concession," and Tolson accordingly paid the balance of the purchase money in full. (The concessions made to Tolson previously, as implied in the foregoing letter, doubtless consisted of the change in the terms of payment and a subsequent reduction of $250.00 in the price which had been agreed upon.)

It is conceded on behalf of the appellee that upon the face of the conveyance his contract for the purchase was one of hazard, and that he would have no right upon that showing to any relief. Nor, as we understand his contention, does it rest upon anything that passed between him and Peter B. Bradley at the meeting in New York, or at any other time. His claim for relief is based solely upon certain representations alleged to have been made to him by Triplett, which he says he relied upon and was thereby defrauded. He claims that *after the contract of July 4, 1907, was entered into,* Triplett advised him not to have the land surveyed, stating that he had lived on it, cultivated it, knew it, and that Tolson would lose land by the survey and would have to pay the cost of the survey also. He further claims that, although he relied upon these representations, he did not know until after he had settled in full for the land that Triplett at the time he made them knew them to be false. It appears that after Tolson's purchase Triplett obtained a deed to his daughter for the balance of the farm, and subsequently stated to a witness that he knew all the time that the land was short on the right

hand side of the road and that the land which his daughter got from the Bradleys contained the difference.

Tolson's contention, therefore, is that although neither he nor Bradley knew the acreage Triplett did know it, that under the influence of Triplett's representations he entered into the contract, and that the Bradleys, having benefited by a contract which Triplett made for them, were bound by the fraud which he perpetrated, although they themselves may have been innocent of it.

The Bradleys, on the other hand, contend that Triplett's connection with the sale, in so far as they are chargeable with it, ended with the contract of July 4, 1907, which expressly provided for a reduction in the price if the estimated quantity should fall short; that Tolson, not content to rely entirely upon Triplett's agency, and not altogether confident of his authority, took the matter up directly with them and obtained a confirmation of the contract, and thereafter, finding himself unable to meet its alternative terms of payment, either in cash or on time, secured a second contract on his own initiative, of which he now unjustly complains. And they further contend that, even if they could be held responsible for Triplett's misrepresentations, Tolson, by his letter of February 4, 1910, and his subsequent conduct waived any possible right to take advantage of the alleged fraud.

In our opinion the latter contention is conclusive of the controversy, and renders it wholly unnecessary to discuss any other aspect of the case.

It appears to be conceded by counsel for Tolson that the letter in question followed by the payment of the balance of the purchase money, as above set out, would ordinarily constitute an effectual bar to his suit, but it is sought to avoid this result by the claim that at the time the letter was written he did not know the "misrepresentation" had been made by Triplett with knowledge that it was untrue. The

letter is couched in language which conflicts with this claim, and the evidence to explain away this language is not satisfactory. But the claim, if true, is immaterial, because the fraudulent intent of the misrepresentation is itself immaterial. As is correctly stated in the brief of counsel for appellee, addressed there to a different point however, "it is immaterial whether the party making the representation knew it to be false or fraudulent or not, neither does his belief in its truth affect the question." Triplett could not, under the circumstances as claimed by the appellee, make the reckless misrepresentations imputed to him, even if he did not have actual knowledge of their falsity, without committing a fraud both at law and in equity. The clear weight of authority sustains this view. *Grim* v. *Byrd*, 32 Gratt. (73 Va.) 293, 301; *Wilson* v. *Carpenter*, 91 Va. 183, 190; *Spoor* v. *Tilson*, 97 Va. 279, 282; *Lowe* v. *Trundle*, 78 Va. 65, 67; *Cerriglio* v. *Pettit*, 113 Va. 533, 544, 75 S. E. 303; 2 Cooley on Torts (3rd ed.) 953; Merwin's Equity, secs. 502-506; *Hilligas* v. *Kuns*, 86 Neb. 68, 124 N. W. 925, 26 L. R. A. (N. S.) 284, 20 Ann. Cas. 1124; *Johnson* v. *Gulick*, 46 Neb. 817, 65 N. W. 883, 50 Am. St. Rep. 629.

The letter of February 4, 1910, was written by Tolson after he knew all the facts of which he now complains, except the alleged actual *scienter* and fraudulent intent on the part of Triplett. This was, at most, merely a newly discovered incident or feature of the alleged fraud, sufficient to change in degree the moral aspect of the case, but not to create any new right. *Wilson* v. *Hundley*, 96 Va. 96, 102, 30 S. E. 492, 70 Am. St. Rep. 837. His right to disaffirm the contract was no better when he brought this suit than it was on February 4, 1910. By the letter in question he distinctly affirmed it, waived any legal claim to relief on account of Triplett's "misrepresentation," submitted the matter of a reduction of the purchase money to the appellants, and, upon their refusal to make "any

further concession," settled the balance in full, less $250, a voluntary abatement allowed from other considerations, which of course, would have been denied him if he had then elected to litigate. Having once elected to affirm the contract, he cannot thereafter disaffirm it, but must abide by the decision he has made. *Wilson* v. *Hundley, supra,* 96 Va. 101, 30 S. E. 492, 70 Am. St. Rep. 837; *University of Va.* v. *Snyder,* 100 Va. 567, 579, 42 S. E. 337; 2 Pom. Eq. Jur., sec. 897.

We are of opinion that the decree appealed from should be reversed and annulled, the attachment in the cause abated and the bill dismissed. A decree to this effect will be entered by this court.

*Reversed.*