# Wytheville

## D. L. Walton v. Rumsey Light.

June 14, 1943.

Record No. 2669.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Eggleston, JJ.

The opinion states the case.

*J. Lynn Lucas* and *Edwin E. Garrett*, for the plaintiff in error.

*Wilbur C. Hall* and *Frank L. Ball*, for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

The plaintiff, Rumsey Light, brought an action at law against the defendant, D. L. Walton, to recover damages for personal injuries resulting from the negligent action of defendant's agent, James R. Wines. There was a trial by jury, which resulted in a verdict for plaintiff in the sum of $3,000. The motion of defendant to set aside the verdict was overruled by the court and judgment entered in favor of the plaintiff.

The primary question for our decision is the sufficiency of the evidence to sustain the verdict of the jury.

It is a settled rule of the law in this Commonwealth that a litigant, who comes before this court with a verdict of a jury and the judgment of the trial court in his favor,

is entitled to have the case reviewed in the light most favorable to him. If there is a conflict in the evidence upon material matters, the verdict of the jury resolves the conflict in favor of the litigant who prevails in the lower court.

In this case, the evidence is conflicting and, therefore, we must look to the evidence adduced by the plaintiff to judge of its sufficiency.

At the time of the injury, plaintiff was operating a dairy farm in Loudoun county. He had ordered lime from the Riverton Lime Company and the defendant had contracted to deliver it at his farm. On June 6, 1940, defendant sent two trucks, each driven by one of its employees, loaded with lime, to the farm of plaintiff. Upon their arrival at the farm, Wines, the driver of the truck which inflicted the injuries, inquired of the plaintiff where he desired the lime placed and was informed that it was to be unloaded in a certain field. The plaintiff thereupon got on the truck to ride with Wines and show him the designated field. On the way to the field, they approached a dry ditch or "chuck," having sides straight up and narrow at the top. (The evidence fails to show the depth and width of the ditch.) When plaintiff and Wines arrived at the ditch they got out of the truck for the purpose of ascertaining whether or not it could be crossed. Plaintiff told Wines if he thought he could not cross the ditch, to unload the lime where the truck was stationed. Wines replied, "I can get across." The truck was a ton and a half model and was loaded with five tons of lime, and when Wines attempted to cross the ditch, the rear wheels became "stuck" between the sides thereof. After repeated unsuccessful efforts to dislodge the truck, Wines requested plaintiff to get his tractor and pull the truck out of the ditch.

The plaintiff went to his barn and returned with his tractor and a twelve or thirteen foot cable which had an iron ring upon one end and an iron hook upon the other end. Plaintiff backed his tractor up to the rear of the truck and, according to the evidence of the witness Campbell, plaintiff and Wines attached the cable to the tractor and

truck. The manner in which the cable was attached to the vehicles is not shown. Wines returned to the truck and the plaintiff to the tractor where he remained in a standing position between the seat and the steering wheel. The tractor was put in motion by the plaintiff and at the same time Wines put the truck in reverse and "pressed on the gas." When the truck emerged from the ditch the plaintiff "slackened off his gas" and slowed down while the truck picked up speed and ran a distance of "ten paces," striking the tractor with such force that it broke the driver's seat and pinned plaintiff between the seat and the steering wheel.

Though denied by Wines, the evidence of the witness Ellison was to the effect that he "hollered" to Wines to cut off the gas, but evidently Wines did not hear him, as he "kept on coming back with the gas wide open and jamming the truck against the tractor until he choked him over." It is upon this negligent operation of the truck by Wines, the alleged agent of the defendant, that plaintiff bases his right of recovery.

When extricated from the tractor, plaintiff was able to walk, and though bruised and suffering from shock, he expressed the opinion that he was not seriously injured, but later he did consult a doctor. For several months after the accident plaintiff attempted to perform his accustomed farm duties but with only moderate success. However, in the month of October following the occurrence in June, plaintiff again consulted Dr. James T. Jackson of Leesburg, whose qualification as a physician was admitted by counsel for defendant. Dr. Jackson testified that when he examined plaintiff in October, he found a discoloration in the left hip and around the left knee, a discoloration of the left thigh, a scar on the muscle, a pain in his knee and a "nerve that bothered him." Dr. Jackson further testified that he was called upon to examine plaintiff in April, 1941; that this examination disclosed that plaintiff was unable to stand upon his feet for a great length of time; that the "induration" upon his thigh was hardening; that there was a depression three inches in diameter upon the thigh; that this thigh

muscle had atrophied to the extent that his disability amounted to thirty per cent. and that it was of a permanent character.

In our opinion, there is no debatable question that the negligence of Wines and the extent of plaintiff's injury were questions for the jury to decide.

It is contended by defendant that plaintiff was guilty of contributory negligence as a matter of law. The question of contributory negligence was submitted to the jury and decided in favor of plaintiff, as it should have been.

It is further contended that plaintiff is not entitled to recover damages for permanent injury, "for the reason that there is no claim of permanent injury to the plaintiff asserted either in his notice of motion or in his bill of particulars."

The notice of motion for judgment was filed under the provisions of Code, section 6046. This section has been construed by this court time and time again since its first enactment in 1887. Ever since the opinion in the case of *Rinehart* v. *Pirkey*, 126 Va. 346, 101 S. E. 353, was handed down, it has been the accepted rule of law that the notice is sufficient if it is such that the defendant cannot reasonably mistake its object, *i. e.*, the cause of action stated therein.

In plaintiff's notice of motion he alleges that by reason of the negligent operation of the truck by the agent of defendant, he suffered "serious bodily injuries." The bill of particulars is to the same effect. No demurrer to the notice was filed by defendant, nor was any objection raised in regard to the bill of particulars. If defendant was in doubt as to the alleged right of recovery or as to the injuries sustained, all he had to do was to file a demurrer as to the sufficiency of the notice of motion for judgment, or to request additional particulars of plaintiff's claim. This he did not do, but contented himself with filing his grounds of defense which related only to the question of primary negligence.

That the rule of decision prevailing in this Commonwealth is the prevailing rule elsewhere is shown by this

statement of the rule in 15 American Jurisprudence, sections 311 and 314:

■ "If the defendant is informed by the pleading generally as to the effects produced by the wrong, he is bound to anticipate evidence as to the extent of the plaintiff's injuries, the origin or aggravation of which can be reasonably traced to such wrong. It is the fact of injury that is elemental, not the nature or character of the particular wounds and hurts which necessarily and naturally result from the negligent act.

   *       *       *       *       *       *

■ "According to the weight of authority, however, damages for the permanency of an injury are recoverable under a general allegation for damages, without specifically alleging the fact of permanency. Many cases seem to have adopted this rule unconditionally and without any attempt to express any qualification of it with reference to the nature of the allegations and the injuries alleged; in fact, in many of the cases supporting the rule stated, the injuries described refute any idea of permanency being necessary or even the probable effect thereof."

■ It is assigned as error that the court erred in refusing to admit in evidence a letter written to defendant by counsel for plaintiff. It is apparent from the contents of the letter that it was in the nature of an offer of compromise, and, therefore, inadmissible.

It is further assigned as error that the court erred in granting the following instructions offered by the plaintiff:

"The Court instructs the jury that this action is based on alleged negligence on the part of the defendant acting through his agent engaged in the operation of his truck. By negligence is meant the doing of something which under the circumstances a man of ordinary prudence would not do or the failing to do something which under the circumstances of ordinary prudence (he) would do. If you believe from the evidence that under the circumstances which the jury regards as proven in this cause, the defendant's

agent in charge of his truck failed to use ordinary care in the operation thereof and was negligent and that as a result of such negligence the plaintiff was injured without fault on his part you will find for the plaintiff."

"The Court instructs the jury that it is the duty of the defendant's agent in charge of this truck to keep the same under proper control; to operate the same with ordinary care and to use due and ordinary care and caution to prevent injury to the plaintiff, and if you believe from the evidence that under the circumstances proven in this case, the said driver failed in any one or more of these duties the same would be negligence on his part and if you believe that the injury to the plaintiff was proximately caused thereby without fault on the part of the latter you will find for the plaintiff."

"The Court instructs the jury that a principal is responsible and liable for the acts of his agent and if you believe from the evidence in this case that the driver Wines was the agent of the defendant at the time of the accident and engaged in his employer's business then the defendant is responsible for the acts of the said agent, and the plaintiff may sue either or both the principal and agent at his election."

When read together, as they should be, it is apparent that the jury was fully instructed on the various phases of the case, viz., the negligence of the defendant, if any; the contributory negligence of the plaintiff, if any; and the question of whether or not Wines was the agent of the defendant at the time of the accident. All of these questions have been settled by the verdict of the jury in favor of the plaintiff.

The evidence warrants the verdict found and there is no merit in this assignment of error.

It is further argued that the court erred in granting and refusing certain other instructions. The record shows that eighteen instructions were given the jury—a number more apt to confuse than to enlighten them. The other objec-

tions raised in the petition for a writ of error are without merit.

Upon the whole case, we are of opinion that the merits of the case are with the plaintiff.

The judgment is affirmed.

*Affirmed.*