# Richmond

## James Word and C. J. Word v. Will Childs.

March 13, 1944.

Record No. 2732.

Present, Campbell, C. J., and Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*Martin A. Martin* and *Spottswood W. Robinson, III,* for the appellants.

*McKinney & Settle,* for the appellee.

GREGORY, J., delivered the opinion of the court.

The object of this suit was to have the court below determine and declare whether or not the curtesy of Will Childs in the real estate of which his wife, Carrie Word Childs, died seized and possessed in 1941, was forfeited by his alleged desertion in 1934.

The court below, after hearing the evidence *ore tenus,* reached the decision that Will Childs had not deserted his wife and, therefore, was entitled to his curtesy in the land in question.

The evidence was in conflict in many material respects. Stating it in a manner favorable to the appellee, who was successful in the lower court, we find that he and Carrie Word, a daughter of Lemuel Word, were married in 1928, and began living as husband and wife on the farm of Lemuel Word. This farm contained some eighty-five acres, and it was turned over to Childs to be managed and cultivated. The family was supported through his efforts. In the spring of 1934 Childs suffered reverses, and the tobacco allotment to which he was entitled was reduced to three acres. It was suggested by his wife and his father-in-law, Lemuel Word, that he leave the farm and allow it to be cultivated by another until conditions improved. It was agreed between him and his wife that he should go to West Virginia, obtain work there, and return at the end of 1934 and again take charge of and cultivate the farm. Pursuant to this understanding, he left the farm and went to West Virginia. He had children there by a former marriage, with whom he stayed, but before he could obtain work he became ill, and since that time he has been unable to do heavy manual labor or to earn a livelihood. He suffered three paralytic strokes. Each year, except 1934, he spent a por-

tion of his time in Halifax county with other of his children by the former marriage. He maintained his domicile in Halifax county. He is now more than seventy years of age.

In the latter part of 1934 Carrie Word Childs, the wife, left Halifax county and went to Washington, D. C., where she resided until 1939 or 1940. After that time she went to New York, and died intestate there in 1941. Prior to her death, Lemuel Word, her father, had conveyed to her the said tract of land. Lemuel Word inherited the land from his daughter, and in 1942 died, after making a will devising it to James Word, his son, and C. J. Word, his grandson.

It is urgently contended that, by virtue of Code, sec. 5140 (Michie), the appellee was barred of his curtesy in the said tract by reason of his going to West Virginia. That section reads as follows:

"If a husband wilfully deserts or abandons his wife, and such desertion or abandonment continues until her death, he shall be barred of all interest in her estate as tenant by the curtesy, distributee, or otherwise."

As we already have stated, the court below, after hearing the evidence *ore tenus*, has determined that the appellee did not desert or abandon his wife with the intention of not returning to her. This necessarily limits our review to ascertaining whether or not the conclusion of the court is supported by the evidence. We think it is.

It is unnecessary to detail the evidence. The testimony of the appellee and others tends to disclose that he did not desert his wife; that their separation was by mutual consent, and that it was contemplated between them that he would return to her. It is established that soon after he went to West Virginia he became ill and unable to work, and from that time on has been unable to earn a living for himself. He is, and has been since 1934, living with his children by a former marriage.

The appellee testified that he corresponded with his wife while she remained in Washington, D. C., but never heard from her after she went to New York in 1939 or 1940.

Reputable witnesses, who were his friends and neighbors, corroborated him in many material respects.

There was evidence which tended to sustain the charge of desertion, but the court disregarded it and accepted that of the appellee and his witnesses. This it had the right to do.

The conclusion of the court in a factual matter, such as is involved here, supported by substantial evidence, is just as binding upon us as a verdict of a jury, approved by the trial court. Conflicts in the testimony are thereby resolved. *Martin* v. *Richmond, etc., R. Co.,* 101 Va. 406, 44 S. E. 695; *Walton* v. *Light,* 181 Va. 609, 26 S. E. (2d) 29.

The decree of the court is amply supported by the evidence and is accordingly affirmed.

*Affirmed.*