# Richmond

W<span>ILLIAM</span> N. M<span>ASCHE</span>, S<span>R</span>. v. L. H. N<span>ICHOLS</span>, <span>ET ALS</span>.

January 10, 1949.

Record No. 3417.

Present, Hudgins, C. J., and Gregory, Eggleston, Buchanan, Staples and Miller, JJ.

*Beirne & Lerner*, for the appellant.

*J. L. Fray, Hiden, Bickers & Button* and *Butzner & Butzner*, for the appellees.

MILLER, J., delivered the opinion of the court.

This suit was brought by William N. Masche, Sr., appellant, against L. H. Nichols, Marie Nichols and others. L. H. Nichols and Marie Nichols, husband and wife, are the

principal appellees, the others being only incidentally interested. He will be hereinafter designated appellee, and when he and his wife are referred to, they will be called appellees.

The object of the proceeding is to set aside a deed from appellees to appellant, conveying certain real estate and property located at Brandy in Culpeper county. Avoidance of the sale, restitution of money paid on account of the purchase price, and cancellation of all obligations incident to the transaction are sought because of alleged fraud.

From a decree denying relief and dismissing the bill, this appeal was awarded.

Appellant is 60 years old and resided in the State of Connecticut. For the past forty years or more, he has been engaged in the general contracting business, thereby acquiring wide and extensive experience and knowledge in building houses and work of such character. He describes himself as a "general contractor" who knows the general contracting business very well.

On September 2, 1946, he and his wife came to Culpeper county with the intention of purchasing some business property and made contact with the E. A. Strout Realty Agency, Inc. John P. Flannery, representative of that company, hereinafter called agent, undertook to interest them in certain property in that county, but no sale was then effected. They left, but in about two weeks appellant returned, accompanied by his stepson, Walter F. Thibault.

On September 16, 1946, appellant, his stepson and the agent inspected the property of appellees which is the subject of this litigation. Appellees owned about three-fourths of an acre of land with a four-room cottage, and also a garage, general store, lunchroom and filling station which are erected and operated upon the lot.

During the preceding month, appellees had listed this property, with the exception of the garage and a small parcel of land surrounding it, for sale with the E. A. Strout Realty Co., Inc., at the price of $23,000. This writing constituted the contract of agency between appellees and the

company. It gives the location, character, use and description of the property, which is accomplished by means of questions and answers thereto given by the owners, examples of which are as follows: "Frame, brick, stone or stucco? Frame. Roofed with? Metal. Condition inside? Fine, recently papered and painted," and the like.

The business is described as "grocery—general store—lunchroom—beer and wine—tourist &."

The yearly profits and gross receipts therefrom were stated to be $4,800, and $40,000 to $45,000, respectively.

The building in which the business is conducted is separate from the cottage residence. It is briefly represented as being divided—one part constituting the store proper, and the other section or part, which has a separate entrance, is the wine, beer and soft drink parlor.

The cottage is used for living quarters. In that part of the contract of agency, wherein the cottage and its equipment are described, appears the following data concerning the available facilities relating to water, bathtubs, etc. "Question: Water supply? Outside well only. Bath? Tub, water not connected. Running water? No, piped to store."

On September 16, 1946, this data was read by the agent to appellant and his stepson. The three then went upon the property, into and around the store building and over the outside premises. They did not enter the cottage, but walked between that and the store where certain privies could be seen. Those sanitary facilities were observed by appellant and his stepson. The latter then definitely voiced his dissatisfaction with that type of facility for sanitation. Appellee, who was nearby, heard this complaint and thereupon advised appellant that the privies were used in connection with the store and beer parlor and that there was an unfinished bathroom in the cottage. They insist that he also informed them that all it needed was a water connection, which had not been made due to the unavailability of plumbers, but that it would be made. Thibault's dislike of the lack of better sanitation was not allayed and he made his dissatisfaction well known to appellant. No sale was ef-

fected and appellant and his family again left Culpeper county.

About six weeks later, on October 29th, he and his wife returned. Accompanied by the agent, appellant and wife went once more to inspect this property. They entered and looked at the store, wareroom, lunchroom and beer parlor. After examining that part of the premises, they, accompanied by appellee, went into the cottage and stood in the vestibule at and near the door of the bedrooms, one of which opened into the bathroom. Appellant inquired as to the location of the bathroom and the closed door thereto was pointed out by appellee. The agent testified that he entered the bathroom on that occasion. Appellant and his wife say that they were told by appellee that all it needed was to have the water turned on and they did not open or enter it, yet it definitely appears that opportunity was afforded had they availed themselves thereof. Appellee returned to the store, and out of his presence, appellant and wife discussed the price of the property with the agent and agreed to buy if it could be secured for $22,000.

The agent thereupon advised appellee that appellant would buy if the price was reduced to $22,000. That was agreed to and the contract was executed by the parties.

The next morning appellant made the usual arrangements for examination of the title and preparation of the deeds, etc. He and his wife then left for Connecticut where he remained until November 26th, when he came back to complete the transaction. The next day, November 27th, the cash payment was made and deeds delivered.

Appellant thereupon returned to Connecticut to make arrangements for moving his family and effects to Virginia.

The deed of bargain and sale which was filed as an exhibit gives a full description of the real estate. Attached as a part thereof is a plat that definitely discloses the shape, dimension, and lines. From it, the location of any building thereon may be determined. The well, which is operated by electricity, is housed in a structure four feet square and six feet in height, but is not within the area purchased, being about twelve to fourteen feet from the line.

When the sale was closed on November 27th, appellees had not completed the erection of a new home at Brandy which they intended to occupy and thus did not then vacate the cottage. But while appellant was in Connecticut, arrangements were made by telephone conversations for him and his wife to return within the next few days and occupy one room in the cottage and begin operating the business. Appellees were to occupy the rest of the cottage, which included the bedroom into which the bathroom opened, until they could complete their new home.

On December 1, 1946, appellant and wife moved into the one bedroom of the cottage and took over operation of the business. Appellant and wife did not use the bathroom though they admit its facilities, such as they were, had not been denied them.

This occupancy of the cottage as living quarters for both couples continued until December 27th, on which day appellees moved.

No difficulty between the parties seems to have arisen until after appellees departed. At that time and thereafter, appellant made numerous complaints, which he ultimately asserted in this suit.

Specifically he claims that by the recitals in the written listing and statements and representations made by the agent and appellees, he was misled and induced to believe (1) that the well was upon the premises purchased; (2) that the bathroom was fully equipped with proper drainage and sewage piping and only needed to have the water connected to make its facilities fully usable for bathing and sanitary purposes; (3) that the water was adaptable for domestic purposes and use in the business to be conducted; (4) that the water was sufficiently pure to drink; (5) that the yearly profits and gross receipts from the business were $4,800, and $40,000 to $45,000, respectively, and (6) that proper books had been kept disclosing the receipts and disbursements for the business enterprises, though in fact and truth none of such conditions obtained. He further asserted that each and all of these representations were as to material matters, were relied on by him, and he was thereby induced to purchase.

Appellant now admits that the evidence which bears upon the three last mentioned matters is conflicting. He concedes that upon these matters the conclusion of the chancellor, that no fraud or misrepresentation of material fact relied upon by appellant to his detriment has been proved, is final. Yet, as to the other three allegations of fraud complained of, and upon which he sought rescission, he now assigns error and insists that the evidence conclusively establishes that there was misrepresentation with regard to (1) the location of the well, (2) the condition and facilities in the bathroom, and (3) the quality of the water incident to its fitness for the purposes intended.

As to each and all these matters, he asserts that there has been express fraudulent representation or a course of conduct and statements by appellees and their agent which were calculated to deceive and had deceived him to his detriment.

The fundamental principles of law involved are well established. The difficulty is in the appraisal and evaluation of the facts and circumstances presented.

To secure avoidance and rescission of the transaction, it is encumbent upon appellant to establish by clear, cogent and convincing proof that there has been expressly, or by course of conduct, misrepresentation or concealment of a material fact and that he was thereby induced to make the purchase which would not otherwise have been made.

Fraud cannot be presumed but must be clearly established by either direct or circumstantial evidence. *Porter* v. *Frost,* 183 Va. 549, 32 S. E. (2d) 687 and *Jacobs* v. *Jacobs,* 184 Va. 281, 35 S. E. (2d) 119.

All of the testimony was heard *ore tenus* and it is conflicting upon some of the material matters that were in issue. As to other matters, different conclusions might be drawn, depending upon the weight and effect given to physical conditions observable in and upon the premises.

During the time the testimony was being taken, upon motion of appellant, acquiesced in by appellees, the trial judge, accompanied by counsel, went upon and viewed the property. The court, having heard the testimony and in-

spected the premises, was in a peculiarly advantageous position to determine and pass upon the weight to be accorded the testimony and circumstances in evidence. What physical conditions did or did not exist constituted a material part of the matters at issue. It is clear that a view was of assistance in determining whether the well was obviously off the premises and what conditions obtained and were visible concerning the sanitary facilities. It better enabled the court to weigh the testimony and properly evaluate all the evidence at hand.

Since the testimony was heard *ore tenus*, all conflicts in the evidence on the several matters at issue have been finally resolved in favor of appellees. *Purcellville* v. *Potts*, 179 Va. 514, 19 S. E. (2d) 700, 141 A. L. R. 633; *Word* v. *Childs*, 182 Va. 394, 29 S. E. (2d) 227; *Taylor* v. *Taylor*, 182 Va. 602, 29 S. E. (2d) 833; *Lowdon* v. *Lowdon*, 183 Va. 78, 31 S. E. (2d) 271, and *Collins* v. *Collins*, 183 Va. 408, 32 S. E. (2d) 657.

As the case now stands upon appeal, we are not warranted in reversing the decree if there is credible evidence upon which it is based.

Whether an experienced building contractor, after having twice been upon and viewed the property which he was interested in acquiring, had been misled by the written listing and certain statements was the real issue presented

Aided by a view, the court has, in weighing the evidence, decided that no fraud was proved to have been perpetrated upon appellant by appellees or their agent which induced him to purchase.

In the court's opinion, made a part of the record, the trial judge concluded that appellant had not been misled as to the location of the well. That factual finding was justified. The physical location of the well with reference to the other structures, and the boundary lines appearing on the plat, were such as to fully warrant the conclusion that appellant was aware that it was upon that part of the property not included within his survey.

It would serve no good purpose to discuss at length

the testimony incident to the quality of the water and its fitness and adaptability to certain uses. In this respect the testimony is conflicting. It is what is commonly called "hard water", which is far from the best for domestic uses, yet that it may be so used, though not wholly satisfactory, is evident. No express statement or warranty was made as to its quality, fitness or availability for different uses. We cannot say that the evidence is such as to compel the conclusion that its quality was misrepresented.

Whether the chancellor was correct in his decision concerning the alleged misrepresentations regarding the condition of the bathroom presents the most difficult question. A fair conclusion from the information given by the prospectus was that there was no running water in any part of the cottage. That appears from the replies to several questions therein. They were to the effect that the water was from an outside well and piped to the store only; that there was a tub in the bathroom, but without water connection, and that there was no running water in the cottage.

The evidence discloses that neither appellant nor his wife actually entered the bathroom until after the deeds had been delivered. They say not before December 27th, but there is positive testimony from Mrs. Nichols that appellant's wife saw and used it during the latter part of November and early December, though no complaint was made until December 27th.

The agent denies having made any statement relative to the bathroom. Appellant, in his testimony, says he expected to find a modern bathroom with such facilities as are usual where there is municipal water supply and sewage disposal. Yet he appears to have been aware that there was no municipal water system in the village of Brandy.

While on the premises and actually within a few feet of the bathroom door, which was pointed out to him and which he could have then entered, he obtained a reduction of $1000 on the purchase price and signed the contract, well-knowing that no running water was available in the cottage and that water connection had not been made in the bath-

room. He was likewise aware that some plumbing work was necessary before the facilities were available because he had been told that such services were needed but difficult to obtain.

With these circumstances confronting an experienced builder and contractor, he executed a contract reciting that he had inspected the premises and that the purchase was made "solely as a result of said inspection." The trial court concluded that appellant either knew of the conditions obtaining or negligently failed and refused to examine them.

Appellant relied upon the cases of *Wilson* v. *Carpenter*, 91 Va. 183, 21 S. E. 243, 50 Am. St. Rep. 824, and *McDaniel* v. *Hodges*, 176 Va. 519, 11 S. E. (2d) 623, and others of similar import wherein misrepresentation or concealment of some material fact or facts relied upon by the complaining party was convincingly established and the sale or transaction thereupon avoided. It would serve no good purpose to discuss at length the material difference between the testimony and circumstances appearing in evidence in this case and the facts established in those cited. It is sufficient to say that the evidence offered in proof of the alleged fraud in the case at bar is of less weight than in some of those cited. As to others, the difference is that the facts and circumstances here tend much more strongly to establish that the appellant relied upon his own inspection and investigation, and that he purchased as a result of the information so obtained, rather than that the purchase was induced by the representations or statements made by appellees or their agent.

The law upon this phase of the subject as announced in *West End Real Estate Co.* v. *Claiborne*, 97 Va. 734, 737, 750, 34 S. E. 900, is most applicable to the evidence in this record. There Judge Keith analyzed the effect of misrepresentation of a material fact relied upon without inquiry, as contrasted with its effect where the party to whom it was made subsequently (a) undertook and made a full and independent investigation and inquiry and acted upon the

information so obtained; or (b) made a partial inquiry, with full opportunity of complete investigation and ascertainment of all the facts, and then elected, not to exhaust the readily available sources of information, but to act upon the knowledge obtained from his partial inquiry. In either of the latter instances, if he in fact acts upon the information so secured by himself, he will not be heard to say that he relied upon the previous misrepresentation of fact.

To like effect is 55 Am. Jur., "Vendor and Purchaser", sec. 65, p. 536.

We cannot say that the court was in error in deciding that the evidence failed to prove that fraud was practiced upon appellant and that he was thereby misled and induced to make the purchase. The decree appealed from is affirmed.

*Affirmed.*