**GOLF RANCH RESORT MOTEL, INC.,**
a Virginia corporation, Plaintiff,

v.

**TAR HEEL MORTGAGE COMPANY,**
etc., et al., Defendants.

Civ. A. No. 6791–N.

United States District Court,
E. D. Virginia,
Norfolk Division.

Jan. 12, 1972.

---

Douglas E. Ballard, Norfolk, Va., for plaintiff.

Ralph E. Lawrence, Norfolk, Va., for Tar Heel Mortgage Company, etc., and Jesse Noah Williams, etc., defendants.

Maurice Steingold, Norfolk, Va., for Wyatt B. Johnson, etc., defendant.

## MEMORANDUM OPINION

MacKENZIE, District Judge.

The plaintiff seeks recovery of compensatory and punitive damages, charging the defendants with actual fraud in certain loan procurement transactions. More specifically, the plaintiff alleges that the defendants (Tar Heel, Williams, and Johnson) held themselves out as mortgage loan brokers, fraudulently induced the plaintiff's reliance on assurances that they (the defendants) could procure two loan commitments, one for $400,000., the other for $600,000.; fraudulently misrepresented to the plaintiff that the loans would be forthcoming; and fraudulently misrepresented the financial stability and solvency of their loan sources (Continental Investment Bankers, Inc., hereinafter referred to as CIBI).

The plaintiff further alleges that although loan commitment letters were, in fact, obtained from CIBI by defendants, for which defendants received a fee of $60,000.00, the loans were never forthcoming. The plaintiff notes further that despite repeated requests for return of the advanced fees, the defendants have refused to remit such funds.

The defendants answer by denying all charges of fraudulent misrepresentation or any fraudulent intent. They further seek to absolve themselves by showing that two loan commitments, in the form of letters from CIBI to Messrs. Ware and Floyd, principal officers of the plaintiff corporation, were, in fact, obtained. The defendants assert these facts as proof that they performed fully all duties owed the plaintiff by virtue of their loan procurement contract. Upon that contract they seek to retain the fees received for procurement of the commitments which proved worthless.

This dispute arises out of the following basic facts:

In the fall of 1967 Ware and Floyd (principals of Golf Ranch Resort Motel, Inc.) were considering the prospect of purchasing the Golf Ranch Motel at Virginia Beach, Virginia. In early January 1968, Ware read an advertisement of Tar Heel Mortgage Company in the Raleigh Observer, representing Tar Heel Mortgage Company as a mortgage loan broker procuring loan commitments for various types of businesses. Ware answered the advertisement, and with Floyd met with defendants Johnson and Williams at Virginia Beach to discuss the possibility of obtaining a loan for the purchase of the Golf Ranch Motel. After a second meeting, Ware and Floyd executed a mortgage commitment application dated January 15, 1968. Both Johnson and Williams assured Ware and Floyd, at this time, that the loan commitment would be forthcoming, that CIBI was reputable and financially sound, and that there would be no problem in obtaining the desired loans. The Mortgage Commitment Application required the prepayment of Sixty Thousand Dollars ($60,000.00) "earnest money" that was "to be held by an Escrow Agent".

On January 16, 1968, CIBI sent the plaintiffs two commitment letters indicating its commitment to loan plaintiffs

the sum of $600,000.00 and $400,000.00 for the purchase and expansion of the Golf Ranch Motel.

At this point, Ware contacted his local banker seeking information as to whether or not CIBI had sufficient assets to justify its commitments. Ware's banker checked the deposits of CIBI in a New York bank account and reported them insufficient to justify the commitments. Upon further inquiry, Ware was told by CIBI that its primary assets were in Kansas City. Ware then arranged a trip to the Kansas City offices of CIBI with Johnson and Williams to meet Mr. William Skillman, president of CIBI, and discuss the loan further. After viewing the offices and physical layout and brief discussions concerning the loan with Skillman, Ware called Floyd and directed him to wire the $60,000.00 "earnest money" to CIBI, Kansas City, Missouri.

It is undisputed that Williams and Johnson each immediately received $15,000.00 of the $60,000.00 "earnest money" as their "finder's fee" or commission for procuring the loan commitments and that none of the $60,000.00 was ever held by an "escrow agent".

At the time application for the loans was made by plaintiffs, defendants Johnson and Williams both assured plaintiffs that the loans could be obtained within a relatively short time after approval of the application by CIBI. And on March 8, 1968 a letter from CIBI informed Ware that on June 16, 1968 CIBI would finalize the details of the loan, indicating the "exact time, place and manner of closing".

However, on April 22, 1968 all of CIBI's assets were purchased by Texas National Investment Bankers, Inc. Plaintiffs never received any loan funds in accordance with the CIBI loan commitments. Repeated inquiry by Ware of Texas National, Williams and Johnson resulted in continued stalling and assurances that the loans would be forthcoming. The plaintiffs have, in fact, never received the loans for which CIBI committed itself. Furthermore, Williams and Johnson have repeatedly refused to refund any of the $60,000.00 "earnest money" paid by plaintiffs for procurement of the commitments.

These facts raise three basic issues:

(1) Were the defendants Williams and Johnson guilty of fraud in their dealings with the plaintiffs?

(2) Was there, in fact, any reliance by the plaintiff on any fraudulent misrepresentation that the defendants may have made?

(3) Even if the full $60,000.00 "earnest money" cannot be recovered, given a finding of fraud on the part of the defendants, should they be required to return any proceeds they received as a result of that fraud (this latter inquiry is developed for appellate purposes)?

The defendant Tar Heel Mortgage Company, at all times mentioned hereinafter, was a foreign unincorporated association organized and existing under the laws of North Carolina. The defendants Jesse Noah Williams and Wyatt B. Johnson are both residents of North Carolina. The plaintiff, Golf Ranch Resort Motel, Inc., is a corporation organized and existing under the laws of Virginia. Accordingly, this court properly takes jurisdiction over the matter between the aforementioned parties by virtue of Title 28 U.S.C. § 1332 on grounds of diversity of citizenship. The pleadings reveal that the jurisdictional amount in controversy requirement has been met as well.

■ While there is no established rule as to what constitutes fraud, and every case alleging fraud must be considered on its particular facts, Murphy v. McIntosh, 199 Va. 254, 99 S.E.2d 585 (1957), there are certain basic elements essential to proof of every charge of actual fraud. In order to prove fraud, in every case, the plaintiff must show (1) false representations made, (2) the defendant's knowledge of their falsity, or his recklessness or indifference to the truth or falsity of representations made, (3) the plaintiff's reliance upon the fraudulent misrepresentations, and (4)

damages resulting therefrom. Bishop v. E. A. Strout Realty Agency, 182 F.2d 503 (4th Cir. 1950).

■ The essence of the plaintiff's complaint of fraud is that the defendants Williams and Johnson assured the plaintiff that they could procure CIBI's commitments, that CIBI was fully capable of funding the loans, and that the loans would be closed and finalized soon after commitments were received. Gordon Ware, a principal of the plaintiff, testified that at the time he and his partner, Floyd, met with Johnson and Williams to discuss the loans *both defendants personally assured* him in affirmative language that not only commitments would be obtained but also assured him that the loans would be closed and funds *forthcoming* soon thereafter. *Both* defendants assured Ware, further, that CIBI was financially sound.

The defendants reply to these charges that they contracted only to obtain commitments from CIBI which were, in fact, obtained, and that there is no misrepresentation evidenced in their dealings with the plaintiff.

We find the defendants' position to be unsound in several respects.

First, by representing themselves as loan commitment brokers and contracting with plaintiffs to obtain CIBI loan commitments they represented themselves as capable of obtaining, for the plaintiff, more than a mere scrap of paper. Grainger v. Jackson, 122 Ga.App. 123, 176 S.E.2d 279 (1970). It is clear from the evidence that the defendants intended to represent, and did, in fact, represent that the loan commitments they would obtain had value and were backed *by the intent and resources to* perform. The defendants' efforts to rely on their asserted limited contractual duty fails to absolve them under these factual circumstances. *Grainger, supra.*

■ A second weakness in defendants' position is that the representations of the defendants exceed the scope of the contract between the parties. Both

Johnson and Williams personally guaranteed the closing of the loans and the integrity of CIBI. While these guarantees by the defendants are not sufficient to hold them individually liable to fulfill the commitment of CIBI, they are, nevertheless, indicative of false, reckless assurances by the defendants. That misrepresentations made without specific fraudulent intent but made with reckless abandon and disregard for the truth may constitute fraud is undisputed. Bradley v. Tolson, 117 Va. 467, 85 S.E. 466 (1915).

There was evidence that on several occasions Williams and Johnson reassured Ware that the loan funds would be forthcoming soon. That neither was in a position to know is also evident. Neither Williams nor Johnson was in a position of authority with CIBI and neither was in a position to speak for CIBI as its agent.

Johnson's lack of knowledge of CIBI is evidenced by his own testimony. He indicated that he was very new to the mortgage loan business, having become involved only two or three months prior to the Golf Ranch negotiations. His understanding of CIBI's financial status was a cursory reading of a routine Dun and Bradstreet rating, dated May 2, 1967, and reporting CIBI's status as of October 28, 1966, over a year prior and only seven months after CIBI's incorporation.

The entirety of this evidence reveals the inability of both Williams and Johnson to make such positive and repeated assurances that CIBI's loan commitments would be honored. Johnson and Williams, if not guilty of deliberate fraudulent misrepresentations, are guilty of reckless statements without regard for their veracity which were made in furtherance of their own financial gain. This evidence alone is supportive of a finding of fraud on the part of Williams and Johnson. *Bradley, supra.*

While we find the defendants' reckless representations, in themselves, constitute fraud, certain other evidence is strongly

indicative of a more deliberate kind of fraud.

■ At the time Johnson and Williams were negotiating the Golf Ranch transaction, they had been involved in only one prior loan with CIBI. Nevertheless, at the very moment both Johnson and Williams were reassuring Ware, they were aware of CIBI's failure to meet the one prior loan commitment with which they had been involved. The one prior CIBI transaction involved a Mr. Grady's efforts to get a loan in order to consolidate his personal debts. Mr. Grady testified to a sequence of events identical to those experienced by Ware and Floyd, plaintiffs here. Grady contacted Williams, met with Johnson and Williams, made application, paid $6,000.00 "earnest money", and was repeatedly assured by *both* Johnson and Williams that the loan commitment would soon be fulfilled by CIBI. As with Ware and Floyd, Grady never received any loan funds from CIBI and was unsuccessful in regaining his "earnest money" from Johnson or Williams.

Testimony from three other witnesses, Baysden, Sale, and Gentry paralleled that of Ware, Floyd and Grady.

In each of these transactions Williams was the only person who represented Tar Heel Mortgage Company. After the Golf Ranch deal fell through, Johnson disassociated himself from Williams. The latter three transactions occurred after the Golf Ranch deal, but all of the transactions brought to this court's attention, including the Golf Ranch negotiations, took place within a fifteen to eighteen months period from January, 1968 until June, 1969.

The evidence of these prior and later similar transactions is properly admitted to prove the state of mind of the defendants, here charged with fraud. Osborne v. Holt, 92 W.Va. 410, 114 S.E. 801 (1922); Federal Trade Commission v. Cement Institute, 333 U.S. 683, 68 S.Ct. 793, 92 L.Ed. 1010 (1948); United Mine Workers v. Pennington, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965).

In this series of identical transactions, a clearly recognizable course of conduct persists throughout. Williams, in every case, and Johnson, in dealing with Grady and the Golf Ranch representatives, solicited loan applications, obtained loan commitments from CIBI, received a fee for this service, repeatedly assured the loan applicants that the loan would be forthcoming, and assured them that the finder's fee ("earnest money") would be returned if the loan failed. In no case was the loan commitment closed. In no case did any money become available. And in no case was the finder's fee, which had been paid, refunded. Williams consistently assured loan applicants of prompt closings by CIBI with full knowledge of CIBI's repeated failures to meet its commitments. Johnson had similar knowledge in dealing with the Golf Ranch representatives by virtue of the unsatisfactory result in the Grady transaction.

This evidence lends considerable weight to a theory of conspiracy and fraudulent intent on the part of Williams and Johnson as well. *Grainger, supra.*

■ The defendants contend that even conceding that they made purposeful or reckless misrepresentations, the plaintiff did not rely on these misrepresentations and is, therefore, not entitled to recover under a theory of fraud.

Reliance by the plaintiff, in a fraud case, upon the alleged misrepresentations is essential to recovery for fraud. Harris v. Dunham, 203 Va. 760, 127 S. E.2d 65 (1962); General Finance Corp. v. Keystone Credit Corp., 50 F.2d 872 (4th Cir. 1931).

The defendants' assertion that reliance is lacking is precipitated by two facts admitted by the plaintiff.

First, before paying any "earnest money" to Williams, Ware inquired at

his local bank regarding the financial ability of CIBI to supply the funds requested in the loan application. The plaintiff admits that Ware made an inquiry of a Mr. Sykes at a local branch of Virginia National Bank. Mr. Sykes' investigation of CIBI amounted to nothing more than an inquiry as to the size of CIBI's bank account in a New York bank.

Such a cursory request to one's banker, seeking information on an out-of-state mortgage brokerage house, where the banker's only investigative effort takes the form of a mere inquiry as to the size of the mortgage company's bank account, is not such an investigation as would charge the plaintiff with initiating its own independent investigation to such an extent as would vitiate its reliance on the misrepresentations that had been made regarding the financial status of the mortgage company.

■ The second basis of the defendants' claim that reliance is lacking is that following the bank inquiry, Mr. Ware did travel to the Kansas City offices of CIBI with Johnson and Williams. He went to the Kansas City CIBI offices, accompanied by Johnson and Williams, met with Mr. Bill Skillman, President of CIBI, and discussed his loan application to a very limited degree. He only went to CIBI's office, observed the number of telephones and secretaries there and assumed the company was "busy".

■ An independent investigation by a plaintiff who is charging fraud may vitiate his reliance upon the misrepresentations relating to matters investigated, Harris v. Dunham, 203 Va. 760, 127 S.E.2d 65 (1962). This may be true even where the investigation is inadequate or incomplete. Piedmont Trust Bank v. Aetna Casualty & Surety Co., 210 Va. 396, 171 S.E.2d 264 (1969); Masche v. Nichols, 188 Va. 857, 51 S.E. 2d 144 (1949). We find no fault with such basic law, but find it inapposite to the case at bar given the factual circumstances attendant to this case. Harris,

supra, and Masche, supra, involved situations where the plaintiff was given an opportunity to make a complete investigation and was provided with the information needed to enable him to discover the facts he later claimed were misrepresented.

This was not the case here. The plaintiff's inquiry at his bank could have been expected to yield little more than it did, a cursory check on the CIBI bank accounts. And as for the visit in Kansas City, the evidence fails to reveal any effort by CIBI officials to reveal or explain candidly the relevant records, accounts or financial indicators of its business as was the situation in Dunham, supra. Nor was there the easy access to the pertinent data which plaintiff would need in order to make his own judgment as was the case in Masche, supra.

Indeed, the case at bar more nearly meets Equitable Life & Casualty Ins. Co. v. Lee, 310 F.2d 262 (9th Cir. 1962). There, a plaintiff sought recovery for fraud in the sale of a "profit sharing" insurance policy. The defendants in that case made glowing representations, assuring the plaintiff high dividend rates and probable stock splits. The plaintiff, made suspicious by such promises, requested information about the defendant insurance company from several independent insurance specialists. The Ninth Circuit, speaking to the reliance issue there said:

> "The mere fact that Dr. Lee (the plaintiff) may have been suspicious of the defendant company and sought out the advice of others, does not preclude the fact of reliance on the statements of the defendant's agents." 310 F.2d 262 (9th Cir. 1962), at page 267.

Ware's investigation of CIBI was undertaken with much the same attitude, that of vague suspicion. In light of the facts that whatever investigation was made was extremely cursory, and the unavailability of information necessary to allow the plaintiff to rely on his own knowledge rather than the defendants'

representations, we find no merit in defendants' claim that reliance was lacking.

In essence, this case is a prime example of the racket that raced across the United States in the mid-60's. A mortgage broker, ostensibly clean, obtains a valueless mortgage commitment which is never closed, and relieves the prospective borrower of a "finder's fee" up to 6–10% of the commitment.

The proof here preponderates that these defendants were part and parcel of that shell game and that they knew, or should have known, that the commitment was worthless and their receipt of a "finder's fee" a travesty on justice.

In our view, the plaintiff should recover from the defendants (Tar Heel Mortgage Company, Jesse Noah Williams, and Wyatt B. Johnson) the sum of $60,000.00 and counsel is directed to present an order in accord with this Memorandum Opinion. Furthermore, we find all other defendants (Continental Investment Bankers, Inc., Bill M. Skillman, George Blocker (alias Frank Blosser), Texas National Capital Co., Inc., and Dan Borchardt) in default and award a like judgment for $60,000.00 against each.

■ For appellate purposes, in any event, at the very least, Johnson and Williams should not be allowed to retain any part of the finder's fee. They admit that they spent $30,000.00 of it between them.

■ One, who, by perpetrating fraud upon another has derived profit therefrom, cannot be permitted to retain such unjust profit. Millboro Lumber Co. v. Augusta Wood Products Corp., 140 Va. 409, 125 S.E. 306 (1924).

Johnson's assertion is the height of boldness when, admitting his involvement with Williams, he thinks he should be allowed to retain the $15,000.00 illgotten gain because of "all the worry" this has caused him.