## CIRCUIT COURT OF THE CITY OF NORFOLK

Thomas F. Spruill et al.

v.

Young's Industrial Supply, Inc.

July 9, 1987

Case No. (Chancery) C-84-864

By JUDGE CHARLES R. WATERS, II

The issue in this case is whether the sale of a business may be rescinded because of active misrepresentations of past and/or present material facts by the sellers, under circumstances where the purchasers embarked upon their own independent investigation of the business prior to the purchase. The answer, I think, is no, at least under the facts and circumstances of this case. In reaching this decision, I am forced to disagree with the conclusion of a most highly esteemed Commissioner, who is to be commended for his fine and thorough work in the preparation of his report.

The detailed facts are contained in the file and what follows is only a brief summary.

Albert Young, Sr. ("Young Sr.") and Albert Young, Jr. ("Young") were co-owners of Young's Auto Supply, Inc. ("Auto") and Young's Industrial Supply, Inc. ("Industrial"). Both businesses were located on the same premises and Young Sr. operated Industrial while Young operated Auto. the same telephone was utilized and various assets were commingled.

Young Sr. and Young decided to sell Industrial and Thomas F. Spruill ("Spruill"), Gillis O. Goodson and Roy W. Stuart, all experienced businessmen, agreed to pur-

chase. They now argue that they were induced to purchase because of misrepresentations concerning the terms of the lease, the inventory and the ownership of certain fabricating equipment; however, prior to closing Spruill was on the premises on a daily basis for several weeks, and an attorney and a C.P.A. were hired by the purchasers to investigate the business. Although the terms of the employment are unknown, at the very least it must be assumed that Spruill was to determine whether there were problems in the operation of the business, the attorney was to determine whether there were legal problems and the C.P.A. was to determine whether there were financial problems. Young Sr. retained a substantial ownership interest in the business and agreed to stay in the employ of the business, and in fact did so for some time after the closing until the parties reached total disagreement.

The business was hopelessly insolvent at the time of closing.

The fact was that Auto and not Industrial was the lessee under the primary lease, and the sublease was for a shorter term than had been represented. Neither Spruill, the attorney nor the C.P.A. asked to see or review the lease, despite the fact that it was obvious to all concerned that Industrial and Auto were both actively operating on the same premises.

Much of the inventory was commingled and there was a question about which and what amount of inventory belonged to Industrial and the true value thereof; however, Spruill, the attorney and the C.P.A. had access to all tax returns, year-end audits, quarterly reports, minutes, books and ledgers available. Very few of these documents were examined, although everything requested was produced. There is no evidence that the company bookkeeper hid any information. A net worth statement was never prepared by the purchasers and apparently an examination of assets against liabilities was never completed.

A few telephone calls would have revealed that Industrial had no credit with most of its suppliers, who required cash before delivery, and that the rest were clamoring for payment.

With regard to the questionable fabricating equipment, although it had stick plates attached indicating that it belonged to Industrial, it is fact belonged to Auto. In

none of the books and records was this equipment listed as an asset of Industrial. The agreement provided that a list of all equipment be produced at or before closing but it was never requested and never produced. The tax returns clearly showed that none of this equipment was being depreciated by Industrial.

A request for a list of all accounts payable was never made. An investigation of the accounts payable would have revealed that the debts of the corporation far exceeded its assets. No request for a copy of the lease was made. A list of assets and liabilities was not requested, the list of equipment called for in the agreement was never requested, although the company bookkeeper made available everything that was requested.

Because of the extensive research and analysis contained in the Commissioner's Report, the hard work of counsel, and the complexity of the issues, counsel deserve a detailed opinion from this court setting forth the reasoning and cases supporting my decision in this case. I have set about that task on several occasions but just have not found time to complete the job, and cannot do it now.

Let me simply say that I disagree with the ruling of the Commissioner and believe that this case is governed by *Harris v. Dunham*, 203 Va. 760 (1962). I do not believe, as did the Commissioner, that a distinction can be made between "active" and "passive" misrepresentation under the facts of this case.

Where one elects to make a partial investigation, with full opportunity to complete investigation and ascertainment of the pertinent facts, and then elects not to exhaust the readily available sources of information, but instead to act upon information obtained from the partial inquiry, he cannot then be heard to say that he relied upon previous misrepresentations of fact. *Harris, supra*, at 769; *Masche v. Nichols*, 188 Va. 857, 868 (1949); *DeJarnette v. Brooks Lumber Co.*, 199 Va. 18 (1957); *Poe v. Voss*, 196 Va. 821 (1955); *West End Co. v. Claiborne*, 97 Va. 734 (1900).

The crux of the problem in this transaction was not certain of the equipment or inventory or the lease (about which it is alleged that certain misrepresentations were made), but instead was the hopeless and obvious

insolvency of the business. The sellers did nothing, in my opinion, to divert the investigation of the financial condition of the business undertaken by Spruill, an experienced businessman, an attorney and a C.P.A. on behalf of the purchasers. In fact, as previously stated, the bookkeeper made all of the books, records, ledgers and reports available, and as the Commissioner states in his report, a full examination would have revealed the insolvency, but only a cursory examination was in fact made. In short, the investigation was incomplete and far from adequate.

Moreover, I do not believe that there is sufficient evidence in the record to support the clear and convincing standard of proof necessary to establish fraud, especially with regard to the crucial element of reliance. Here the purchasers placed one of their own in the business on a daily basis for almost a month and hired an attorney and a C.P.A., the strongest possible evidence that they were not relying upon the representations of the sellers who, importantly, made no significant representations regarding the financial stability of the business.

Having investigated partially, the sellers were bound by all that a complete investigation would have disclosed, in this case hopeless insolvency. *Watson v. Avon Street Center*, 226 Va. 614 (1984).

Because of the above, I do not believe that the transaction should be rescinded. Young Sr. should be paid any portion of the purchase price of the business due to him with interest from the date of judgment, and Young Sr. should have judgment against Young's Industrial Supply, Inc., in the principal amount of any unpaid loan made by him to Industrial, together with interest and attorney's fees. Costs and fees should be paid by the complainants.