45365.   GRAINGER et al v. JACKSON.

ARGUED JUNE 8, 1970—DECIDED JULY 1, 1970.

*John M. Hancock, Jr., William V. Hall, Sr., Denmark Groover, Jr.,* for appellants.

*Adams, O'Neal, Steele, Thornton, Hemingway & McKenney, H. T. O'Neal, Jr., Jerome L. Kaplan,* for appellee.

HALL, Presiding Judge. 1. Defendant contends the court erred in denying his motion for judgment n.o.v. as neither fraud nor conspiracy was proved. He contends that no misrepresentation was ever made to plaintiff—that First Fidelity agreed to procure, and plaintiff received, a commitment and only parted with his money after personally examining it—and that they never guaranteed the continued solvency of the lender or that the loan would be closed regardless of circumstances. He further contends that even if someone connected with the transaction (the missing Fox, presumably) did perpetrate a fraud, there is no basis for holding Grainger laible because even though an officer of the corporation,

he had no personal connection or knowledge thereof; that Newberry similarly did nothing to defraud plaintiff, just the contrary; and finally, there is absolutely no evidence that these alleged conspirators in any manner reached an agreement so as to make each responsible for the acts of others.

In an action for deceit, there are traditional elements which must be proved, of course, and a material misrepresentation or concealment is one of them, as is knowledge of the falsehood or reckless disregard of the true facts. *Code* § 105-302. Equally basic however, is the proposition that fraud is "in itself subtle," *Code* § 37-706, and that "circumstances apparently trivial or almost inconclusive, if separately considered, may by their number and joint operation . . . be sufficient to constitute conclusive proof." *Eberhardt v. Bennett,* 163 Ga. 796, 802 (137 SE 64).

That defendants did not make an obvious and quotable misrepresentation is hardly to be wondered, given an operation of the financial magnitude and sophistication of First Fidelity. With the exception of plaintiff, all the borrowers were businessmen of sorts and presumably would not buy the Brooklyn Bridge. The badges of fraud are present, however, in the totality of the evidence, and the jury was authorized to infer that those who dealt with the prospective borrowers led them to believe, either by representation or omission, that the commitment they were to procure had some intrinsic value; that what was being bought for thousands of dollars was worth more than the sheet of paper on which it was written; that the promise of a loan it contained was backed by the intent and the resources to perform; and that they, as professional loan brokers, knew or should have known whether their sources were sound and would not have used them otherwise. At the very least, First Fidelity omitted to inform its customers that it knew (according to Grainger) nothing about the commiting companies other than what a quick glance at some unspecified Dun & Bradstreet report had disclosed, and did not know whether these companies had ever actually closed a loan for anyone. The jury would also be authorized to find that Grainger knew what was going on in his own company and to hold him responsible for any fraudulent scheme the ubiquitous Fox might be running. Similarly, there was evidence from which the jury could infer that Newberry was

aware of the dubious value of the commitments before he told plaintiff they were as good as money and knew plaintiff's commitment could not be borrowed against locally before he accepted his commission on plaintiff's finder's fee.

2. With sufficient evidence of fraud by at least one of the defendants, the issue becomes whether there is sufficient evidence of a conspiracy to bind the others. Appellant stresses the lack of evidence that the three came to any kind of agreement to defraud plaintiff. He points out the paucity of personal contact among themselves. However, the law does not require proof that the parties held a sinister council. "To show conspiracy . . . it need not appear that the parties met together either formally or informally and entered into any explicit or formal agreement; nor is it essential that it should appear that either by words or writing they formulated their unlawful objects. It is sufficient that two or more persons in any manner whether positively or tacitly come to a mutual understanding that they will accomplish the unlawful design. And anyone, after a conspiracy is formed, who knows of its existence and purposes and joins therein, becomes as much a party thereto . . . as if he had been an original member." *Woodruff v. Hughes,* 2 Ga. App. 361, 365 (58 SE 551); *Cook v. Robinson,* 216 Ga. 328, 330 (116 SE2d 742). "Conspiracy may sometimes be inferred from the nature of the acts done, the relation of the parties, the interests of the alleged conspirators, and other circumstances." *Nottingham v. Wrigley,* 221 Ga. 386, 388 (144 SE2d 749); *Walden v. State,* 121 Ga. App. 142 (173 SE2d 110).

The inference was authorized here.

3. Defendant contends the court erred in admitting the evidence of other transactions as being prejudicial. The Georgia law is clear on this point. Evidence of similar transactions is admissible to show fraudulent intent or motives. *Deckner-Willingham Lumber Co. v. Turner,* 171 Ga. 240 (155 SE 1); *Wyatt v. State,* 16 Ga. App. 817 (81 SE 802).

4. All other enumerations are without merit.

*Judgment affirmed. Deen and Evans, JJ., concur.*