## 49291. LOWE v. ROYAL CROWN COLA COMPANY et al.

EBERHARDT, Presiding Judge.

This appeal by plaintiff, Burton N. Lowe, is from an order granting motions for summary judgment by Royal Crown Cola Company and by William O. Durkee, defendants in this action. Plaintiff's sole assertion of error is that the trial judge erred in granting these motions.

In early 1971, defendant Royal Crown, through an employment agency, began searching for an executive to fill the position of Senior Vice President in charge of domestic soft drink operations. Negotiations were conducted with plaintiff primarily through the employment agency and Mr. Durkee, who was the President and Senior Executive Officer of Royal Crown. By May, 1971, the position was offered to and accepted by the plaintiff who left a $10,000 per year job in

Massachusetts. Arrangements were made for his relocation to Columbus, Georgia at the expense of Royal Crown. There was no written employment contract, but preliminary negotiations and affidavits from the parties indicate the following terms: Plaintiff was to begin work effective May 10, 1971, at an annual base salary of $50,000. Bonuses based on increased sales and cost reduction were to be offered at the end of each year, according to plaintiff. According to defendant Durkee, whether bonuses would be paid, when, and the amount was left to the discretion of Royal Crown. Plaintiff asserts in his affidavit that the duration of employment was until December 31, 1972; however, defendant Durkee states that "[the plaintiff] was not employed for any particular term or period of time. This subject was never mentioned in any of my discussions with him." The plaintiff was additionally granted a stock option to purchase 10,000 shares of Royal Crown at the then market value of $23.31 per share. Pertinent parts of the stock option agreement which was signed on May 25, 1971, are:

"3. (a) In the event that the employment of Optionee should be terminated for any cause, other than death of Optionee, whether by reason of resignation or discharge or retirement, the Option shall terminate three months from the date on which said employment shall have so terminated."

"5. The Option shall not be exercised unless and until Optionee shall have remained in the continuous employ of the Company for twelve months from the date hereof . . ."

"9. Optionee agrees to remain and continue in his service as an employee of the Company for a period of at least one year from the date hereof, but at the pleasure of the Company and without restriction on the right of the Company to terminate Optionee's employment at any time."

After having worked for Royal Crown under the aforementioned terms, plaintiff was notified by defendant Durkee that plaintiff's employment had not worked out and that he found it necessary to ask plaintiff for his resignation. Plaintiff was "surprised and astonished" and subsequently expressed concern as to

whether it would be possible for him to exercise his stock option. He was advised by Durkee that under the provisions of the stock option agreement he could not exercise his option "as he had not completed the requisite 12 months service." The following day plaintiff returned to Durkee's office and presented a letter of resignation offering to resign effective August 5, 1972, and requesting among other things the right to exercise his stock option. According to Durkee, the plaintiff's conditions of resignation were rejected and apparently the plaintiff was convinced of the merits of resigning, effective immediately. Royal Crown's general counsel then had plaintiff sign a general release and a letter of resignation dated May 4, 1972, stating simply "Please accept my resignation as Senior Vice President of Royal Crown Cola Company effective immediately. Very truly yours /s/ Burton N. Lowe." Plaintiff was then paid by Royal Crown three checks totaling $19,174.02, which, according to defendants, were in "in consideration of Lowe's resignation and release." The payment of $19,174.02 represented six months of salary as termination pay, less deductions of taxes.

Plaintiff contradicts these facts in his affidavit to this extent: Durkee told him that he would submit plaintiff's letter of resignation to the meeting of the Executive Committee, but that if he did not resign he (Durkee) would call a meeting of the Executive Committee to have him discharged, which would result in severe personal and financial consequences. He further alleges that the letter of resignation was signed because of this threat; that his signing the letter resigned only his position as Senior Vice President and not his status as an employee after May 5, 1972 as evidenced by his receipt of the "compensation" checks for $19,174.02. He further states he believed that his resignation was conditional upon the Executive Committee's acceptance of his original request and that he would be allowed to stay with the company long enough to exercise his stock option.

On May 8, 1972 the Executive Committee voted to accept the plaintiff's resignation after which plaintiff was told to leave and not to return to Royal Crown.

On August 2, 1972, within three months of his termination, plaintiff sent a letter to Royal Crown electing to exercise his stock option and enclosing a cashier's check for $233,100.00. The market value of the stock had substantially increased. Defendant Royal Crown refused to allow the election and returned plaintiff's check.

Plaintiff, in his petition and on appeal, asserts that there is sufficient evidence to warrant jury consideration of: Count 1, whether Royal Crown breached its employment contract by requiring him to resign on May 5, 1972; Count 2, whether Royal Crown breached the terms of its stock option agreement; and Count 3, whether Durkee maliciously interfered with plaintiff's contractual relations with Royal Crown. In his supplemental brief, plaintiff asserts alternatively his right to exercise the stock option based on quasi contract theory. However, such ground for recovery was not set out in plaintiff's petition and was not made a part of the trial judge's ruling. "This court reviews rulings, and a failure to rule when there was no request therefor will not be reviewed by this court." *Nash v. Crowe,* 222 Ga. 173 (149 SE2d 88). Finally, plaintiff alleges two procedural errors, one relating to discovery and one relating to the filing of an affidavit by defendants, neither of which will be considered here because neither was set out separately as an enumeration of error as required by Code Ann. § 6-810.

1. In support of plaintiff's assertion that there was an employment contract of a definite term existing between himself and Royal Crown, plaintiff relies on his affidavit and a letter from an employment consultant used by Royal Crown when initially hiring the plaintiff. The parts of the letter relied upon specifically state that the "bonus system" suggested therein was within the full discretion of Royal Crown and in no way bound Royal Crown to a rigid compensation schedule that extended into the future. The plaintiff's belief that his employment was of a definite duration is a mere conclusion on his part and is not supported by the evidence.

It is the general rule that a hiring indefinite as to time is terminable at the will of either party and creates

no executory obligations. Code § 66-101; *Odom v. Bush,* 125 Ga. 184 (53 SE 1013); *Lambert v. Georgia Power Co.,* 181 Ga. 624 (183 SE 814); *Thompson v. Read Phosphate Co.,* 18 Ga. App. 535 (89 SE 1048). A "permanent job" is an indefinite hiring. *Land v. Delta Air Lines,* 130 Ga. App. 231 (203 SE2d 316). There being no evidence of a hiring of definite duration, we find that the plaintiff's employment was at the will of Royal Crown, and was terminable at any time. There is no factual basis for finding that Royal Crown breached any terms of the plaintiff's employment contract.

2. Having decided that Royal Crown properly terminated plaintiff's employment on May 5, 1971 we next turn to plaintiff's assertion that he had the right under paragraph 3 of the stock option agreement to exercise his option within three months of his termination. Royal Crown refused to honor plaintiff's election on the grounds that under the provisions of paragraph 5 plaintiff was not eligible to exercise the option because he had not "remained in the continuous employ of the Company for twelve months from the date hereof . . ." That paragraph, read in conjunction with paragraph 9 (supra) of the agreement, leaves room for no other conclusion but that plaintiff's remaining employed for twelve months was a condition precedent to his right to exercise the stock option. His termination, whether voluntary or involuntary, meant a failure of that condition.

Plaintiff complains that such an interpretation allows too much control in the hands of his employer, who could at any time unilaterally defeat plaintiff's expectations under the stock option agreement by discharging him within twelve months after the agreement was signed. We must assume that plaintiff, who is a businessman of some experience, read and understood the terms of the stock option agreement. The language of paragraph 9 could not more clearly express the risk to which plaintiff was subject. Also paragraph 9 serves a useful business purpose in that it permits the company sufficient time (one year) to evaluate its new executive. It would be unreasonable to read into the agreement an intent by the parties that the employee

should be rewarded if he is terminated early, whether voluntarily or involuntarily. Nor is paragraph 3 rendered meaningless by paragraphs 5 and 9, because paragraph 3 is still meaningful to an employee who has served with the company for more than one year.

Plaintiff's reliance on Lutzker v. Walter E. Heller & Co., 172 FSupp. 77 ( S. D. N.Y. 1959) is misplaced. The issue in that case was whether a similar three-month grace period should be extended to allow an employee to exercise all or only an accrued portion of his option. There was a six-month continuous employment prerequisite under that stock option agreement and there was no question that the requirement had been met by the employee in that case. As we have seen, such is not the case at hand.

While we have found no similar stock option cases in Georgia, there are cases in other jurisdictions which construe similar stock option provisions and reach the same conclusion. See Freeman v. Copper Range Co., 248 F2d 20 (7th Cir., 1957); Fredericks v. Georgia-Pacific Corp., 331 FSupp. 422 (E. D. Pa., 1971); Shepherd v. General Telephone & Electronics Corp., 411 Pa. 49 (190 A2d 895)(1963); Shipman v. General Transistor Corp., 22 Misc.2d 632 (198 NYS2d 852), aff'd per curiam, 12 A.D.2d 529 (207 NYS2d 734) (1960); Wharton v. Fidelity-Baltimore National Bank, 222 Md. 177 (158 A2d 887) (1960).

Plaintiff's contention that his resignation was only as an officer and did not affect his status as an employee is without merit for all circumstances indicate that he no longer worked for Royal Crown in any capacity after May 9, 1971.

Because we find that plaintiff had not met the employment conditions under the stock option agreement and therefore had no right to exercise the option, we need not reach the issue of whether or not the release which plaintiff signed in favor of the defendant was a valid relinquishment of this right.

3. Plaintiff's further contention is that Durkee is liable in tort for malicious interference with plaintiff's contractual relations with Royal Crown, in both the contract of employment and in the stock option

agreement. This cause of action is based on Code § 105-1207. Plaintiff's petition alleges that Durkee "induced, persuaded and caused [Royal Crown Company's Executive Committee] to accept and approve plaintiff's resignation as Senior Vice President, although said resignation was brought about in a forceful and highly unusual manner." Further, he alleges that "[d]efendant Durkee thereafter intentionally caused Royal Crown Cola to refuse to honor plaintiff's stock option."

There is no evidence to support these allegations. Even if we assume, without finding, that Royal Crown's Executive Committee "fired" the plaintiff (as opposed to accepting his resignation) there is no evidence that defendant Durkee maliciously procured that result. See, e.g., *Campbell v. Carroll,* 121 Ga. App. 497 (174 SE2d 375). Under Section 4 of Article IV of Royal Crown's By-Laws, the President, Durkee, was granted general supervision over the officers and employees of Royal Crown. Thus his suggestion to plaintiff that he submit his resignation was authorized. "Maliciously" as used in Code § 105-1207 means any *unauthorized* interference or any interference *without legal justification or excuse. Luke v. DuPree,* 158 Ga. 590 (124 SE 13). Furthermore, since defendant Durkee was authorized to suggest the plaintiff submit his resignation, and since plaintiff's resignation was submitted and approved, Durkee is not liable for malicious interference with plaintiff's rights under the stock option agreement just because, as a result of his resignation, plaintiff lost his eligibility to exercise his stock option. There being no evidence of wrongfulness on Durkee's part as to either of plaintiff's contract rights, the trial judge's granting of a summary judgment was not error. See *Wilkinson v. Trust Co. of Ga.,* 128 Ga. App. 473 (197 SE2d 146).

*Judgment affirmed. Deen and Stolz, JJ., concur.*

ARGUED MAY 7, 1974 — DECIDED MAY 30, 1974.

*Henson, Waldrep & Williams, Joseph L. Waldrep,* for appellant.

*Hatcher, Stubbs, Land, Hollis & Rothschild, Albert W. Stubbs, Roy M. Thornton, Jr.,* for appellees.