39130. HENDERSON ELECTRIC COMPANY, INC. v. INTERNATIONAL BROTHERHOOD OF ELECTRIC WORKERS LOCAL UNION 613 et al.

MARSHALL, Presiding Justice.

On July 16, 1981, the plaintiff Henderson Electric Company filed the present complaint in the Fulton Superior Court against Local Union 613 of the International Brotherhood of Electric Workers, as well as the business manager and assistant business manager of the local union. In the complaint, the plaintiff is seeking injunctive relief and damages against the defendants based on allegations that the defendants engaged in a conspiracy to drive the plaintiff out of business by unionizing the plaintiff's key employees (journeymen electricians), which the defendants knew the plaintiff

needed in performing many of the plaintiff's contracts.

In support of the allegations in its complaint, the plaintiff submitted the affidavit of a member of the defendant union, who stated that at a local union meeting in the fall of 1979 he overheard the union's business manager tell the union membership that it was his intention to run the plaintiff out of business by unionizing key employees which the plaintiff needed in performing some of its contracts.

The defendants respond that the solicitation and unionization at the plaintiff's business were part of an overall organizational drive to unionize qualified journeymen electricians employed by several nonunion contractors, including the plaintiff. The defendants further respond that these solicitations were made during non-working hours at the employees' homes and that the unionization of the plaintiff's journeymen electricians took place some two years before the complaint in this case was filed. The defendants also assert that the affidavit obtained by the plaintiff is from a disgruntled union member who is himself suing the union.

The defendants filed a motion for summary judgment in which they take the position that under § 7 of the National Labor Relations Act (NLRA), they have a federally protected right to solicit union membership, and, under the facts of this case, state tort liability cannot be invoked to interfere therewith. Citing San Diego Bldg. Trades Council v. Garmon, 359 U. S. 236 (79 SC 773, 3 LE2d 775) (1959), the defendants argue that their right to solicit union membership is a federally protected labor activity exclusively within the jurisdiction of the National Labor Relations Board (NLRB). The trial court granted the defendants' motion for summary judgment. The plaintiff appeals.

1. "The enactment of the NLRA in 1935 marked a fundamental change in the Nation's labor policies. Congress expressly recognized that collective organization of segments of the labor force into bargaining units capable of exercising economic power comparable to that possessed by employers may produce benefits for the entire economy in the form of higher wages, job security, and improved working conditions. Congress decided that in the long run those benefits would outweigh the occasional costs of industrial strife associated with the organization of unions and the negotiation and enforcement of collective-bargaining agreements. The earlier notion that union activity was a species of 'conspiracy' and that strikes and picketing were examples of unreasonable restraints of trade was replaced by an unequivocal national declaration of policy establishing legitimacy of labor unionization and encouraging the practice of collective bargaining." (fn. omitted.) Sears Roebuck &

Co. v. San Diego &c. Carpenters, 436 U. S. 180, 190 (98 SC 1745, 1754, 56 LE2d 209) (1978).

The NLRA of 1935 (popularly called the Wagner Act) has been amended by the Labor Management Relations Act of 1947 (popularly called the Taft-Hartley Act) and the Labor Management Reporting and Disclosure Act of 1959 (popularly called the Landrum-Griffin Act). The Wagner Act, as amended by Taft-Hartley and Landrum-Griffin, is codified at 29 USCA § 151 et seq. Section 1 (29 USCA § 151) states that the denial by employers of the rights of employees to organize and bargain collectively has the effect of burdening or obstructing interstate commerce. Section 7 grants employees the rights to self-organization; to form, join or assist labor organizations; and to bargain collectively through their freely chosen representatives. Section 8 (a) declares certain activities on the part of an employer to constitute unfair labor practices; and § 8 (b), as amended by Taft-Hartley, declares certain activities on the part of a labor organization or its agents to constitute unfair labor practices.

2. In Garmon, supra, the United States Supreme Court was called upon to decide the extent to which the foregoing national labor relations statutes pre-empt state courts from exercising jurisdiction in a tort action arising out of a labor dispute.

In rendering the decision in Garmon, the Court set down the broad criteria for determining "[t]he extent to which the variegated laws of the several States are displaced by a single, uniform, national rule." 359 U. S., supra, at p. 241.

Recognizing that through enactment of the labor statutes Congress had undertaken a comprehensive regulation of industrial relations, but without attempting to define the areas that had been thereby pre-empted by federal authority and withdrawn from state power, the Court held that the states continue to exercise power "where the activity regulated was a merely peripheral concern of the Labor Management Relations Act," id., at p. 243, or "where the regulated conduct touched interests . . . deeply rooted in local feeling and responsibility . . ." Id., at p. 244.

However, the Court held that: "When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield." Id. The Court further held that: "When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." Id., at p. 245.

Under Garmon, "the Court has allowed a State to enforce

certain laws of general applicability even though aspects of the challenged conduct were arguably prohibited by § 8 of the NLRA ... San Diego Building Trades Council v. Garmon, 359 U. S., at 244 [(79 SC, at 779)]. See Construction Workers v. Laburnum Constr. Corp., 347 U. S. 656 [(74 SC 833, 98 LE 1025)] (threats of violence); Youngdahl v. Rainfair, Inc., 355 U. S. 131 [(78 SC 206, 2 LE2d 151)] (violence); Automobile Workers v. Russell, 356 U. S. 634 [(78 SC 932, 2 LE2d 1030)] (violence); Linn v. Plant Guard Workers, 383 U. S. 53 [(86 SC 657, 15 LE2d 582)] (libel); Farmer v. Carpenters, 430 U. S. 290 [(97 SC 1056, 51 LE2d 338)] (intentional infliction of mental distress)." Sears Roebuck & Co. v. San Diego &c. Carpenters, 436 U. S., supra, at p. 193.

However, where the challenged conduct is clearly protected by § 7, this necessarily results in federal preemption of state court jurisdiction over a tort action arising from such conduct. For, to allow a state to impose tort liability for conduct protected by § 7 would create a clear conflict between state tort law and federal labor law. And, as has been cogently observed: "[C]onflict is the touchstone of pre-emption." Garmon, 359 U. S., supra, at p. 250 (Harlan, J., concurring).

In our opinion, the defendants' solicitation and unionization of plaintiff's journeymen electricians fall within the category of activities protected by § 7. For this reason, the State of Georgia is precluded from imposing tort liability thereon.

*Judgment affirmed. All the Justices concur, except Weltner, J., who concurs specially.*

DECIDED NOVEMBER 22, 1982.

*Moffett & Henderson, John Walton Henderson, Jr., Quinton T. Hudson,* for appellant.
*Douglas T. Noonan, Alford Wall,* for appellees.

WELTNER, Justice, concurring specially.
I concur specially because I am not convinced that a *proper* claim of tortious interference upon which is based a demand for monetary damages is pre-empted by federal legislation in the field of labor relations. I suggest that pre-emption can occur only when there exists an alternative system for providing appropriate relief. It is my understanding that federal legislation contains no means whereby monetary damages might be awarded an individual in such a case, hence it cannot be deemed as pre-emptive.
I concur in the judgment in this case because Henderson Electric Co. has failed to state a claim upon which relief might be granted.

Clearly, the efforts of the Brotherhood in seeking to enroll as members certain employees of Henderson Electric Co. was a lawful act. In such a case, motive becomes immaterial, and evil design, were it established by the evidence, cannot make unlawful that which is plainly within the bounds of the law.