## 69499. LEWIS et al. v. RICKENBAKER et al.
### (330 SE2d 140)

BEASLEY, Judge.

Appellants/partners, father and son, operated a service station in Newnan beginning in 1970. They had possession of the station's real property under a written sublease from Texaco. Texaco had a long-term written lease from Hammett and Sargent for the paved service station premises and an unpaved area to the rear.

In 1977 appellee Rickenbaker purchased from Hammett and Sargent, subject to the Texaco lease, the property utilized for the service station plus the adjacent property on which was located Rickenbaker's tractor and farm equipment business. There is evidence in the record that Rickenbaker advised the Lewises that their tenancy would remain the same, the only change being payment to another party.

At the expiration of Texaco's written lease on May 31, 1978, Rickenbaker decided to retain the unimproved portion of the original service station site for use in his own business and to continue to lease the remainder for use as a service station. He entered into a verbal month-to-month lease for the paved portion with a local Texaco distributor, appellees Otis Jones Oil Company, Inc. and its executive officer, Otis Jones (collectively "Jones"). In turn, the Lewises began a verbal month-to-month tenancy of the leased premises with Jones, and although they sought a written lease, they never got one. In September 1980 Rickenbaker fenced the unpaved portion of the rear of the premises. In February 1981 he negotiated a written five-year lease of the paved station premises with appellee Byrom and notified Jones that the month-to-month tenancy was terminated effective May 1. Byrom offered to buy the Lewis' equipment and assets but they declined.

By letter of March 6, 1981, Jones notified the Lewises of the cancellation of Jones' verbal lease with Rickenbaker and consequently of the necessity to terminate the month-to-month verbal lease between Jones and the Lewises.

The Lewises filed suit against Rickenbaker, Jones and Byrom, alleging that they wilfully and intentionally conspired to take over the business and that Rickenbaker, by erection of the fence, wilfully and intentionally deprived the enterprise of a substantial benefit incident to the tenancy.[1] Summary judgment was granted to all four defen-

---

[1] The complaint, filed April 3, includes a prayer that "defendants be temporarily and permanently restrained and enjoined from taking action to terminate the business of plaintiffs or remove plaintiffs from their place of business." Plaintiffs moved from the premises on April 30. Thus, the equitable portion of the suit became moot. No action was specifically taken thereon by the court below. Thus, whether summary judgment was properly granted or not does not involve a consideration of equity, as that original aspect of the case is no longer extant. Consequently, this court has jurisdiction. 1983 Georgia Constitution, Art. VI, Sec. V,

dants. *Held*:

1. Appellants contend that the trial court erred by not specifying in its order whether or not any evidence not in the record was considered in connection with the grants of summary judgment. The order did not state what the court took into account but simply recites that the motions were carefully considered after a hearing was held. There is no showing that the court did not follow the law by taking into account matters of fact outside the record or failing to take into account those things properly to be considered on motions for summary judgment. See OCGA § 9-11-56.

The trial court is not required to make express findings of fact and conclusions of law in ruling on motions for summary judgment, although they are helpful to the appellate courts and instructive to the parties. *Healthdyne, Inc. v. Henry*, 144 Ga. App. 52, 55 (240 SE2d 259) (1977); *Edwards v. McTyre*, 246 Ga. 302, 304 (271 SE2d 205) (1980); *Brown v. Reeves*, 164 Ga. App. 89, 90 (296 SE2d 393) (1982). Even if such were required under OCGA § 9-11-52, an order may comply with the statute notwithstanding the fact that the order does not specify the evidence actually relied upon in making the findings and reaching the conclusions. *Siegel v. Gen. Parts Corp.*, 165 Ga. App. 339 (301 SE2d 292) (1983). On appeals from grants of summary judgment, it is this court's function to examine the record and determine whether the allegations of the pleadings have been pierced so that no genuine issue of material fact remains. *Dunbar v. Green*, 229 Ga. 829, 830 (194 SE2d 435) (1972). If the record does not support the judgment the case must be reversed for trial. If something extraneous was introduced during the hearing, this court would need a transcript to consider it.

This enumeration is without merit.

2. The questions remaining are whether or not the defendants/appellees were entitled to summary judgment.

Appellants contend that the business relationship among themselves and appellees Jones and Rickenbaker was governed by the provisions of the Petroleum Marketing Act of 1978, more specifically, Chapter 55 — Petroleum Marketing Practices, Subchapter 1 — Franchise Protection (15 USC § 2801 et seq.) and that Jones and Rickenbaker were in violation of the Act by giving insufficient notice of termination of the lease, and that this constituted tortious conduct.

Appellants' complaint did not allege any cause of action for violation of the Act, nor did they amend their complaint to include it. Thus, such a position was not a part of the summary judgment of the

---

Par. III and Sec. VI, Par. III (2). Although appellants argue that they have a cause of action for destruction of their business, they did not amend their complaint after they vacated the premises, to embrace this alleged after-acquired cause.

trial court and cannot be considered on appeal. See *Whitaker v. Trust Co. of Columbus*, 167 Ga. App. 360, 363 (306 SE2d 329) (1983). See also *Lowe v. Royal Crown Cola Co.*, 132 Ga. App. 37, 40 (207 SE2d 620) (1974); *Sowell v. Douglas County Elec. Membership Corp.*, 150 Ga. App. 520, 521 (258 SE2d 149) (1979).

Furthermore, the Act itself has specific enforcement provisions, i.e., requirements for maintenance of a civil action for non-compliance, which this is not. See 15 USC § 2805.

There is therefore no merit in appellant's argument in this regard.

3. Appellants further allege that all of the defendants conspired to destroy their business, and in support of such presumption of conspiracy cite speculative scenarios, primarily consisting of sightings of Jones, Byrom and Rickenbaker together and of open expressions of interest to purchase the station, on the part of Byrom.

" ' "To show conspiracy . . . it need not appear that the parties met together either formally or informally and entered into any explicit or formal agreement; nor is it essential that it should appear that either by words or writing they formulated their unlawful objects. It is sufficient that two or more persons in any manner either positively or tacitly come to a mutual understanding that they will accomplish the unlawful design." . . . 1 Eddy on Comb. § 368.' *Woodruff v. Hughes*, 2 Ga. App. 361, 365 (58 SE 551) (1907). See also *Grainger v. Jackson*, 122 Ga. App. 123 (176 SE2d 279) (1970)." " 'But it is also true that "[t]he law should not, and does not, authorize a finding that conspiracy exists merely because of some speculative suspicion . . ." [Cit.] While the question of conspiracy is "solely a question for the jury" if the plaintiff alleges facts and circumstances which suggest a conspiracy or which " 'establish an inference, as a deduction from conduct which discloses a common design.' " (*Hodges v. Youmans*, 129 Ga. App. 481 (2) (200 SE2d 157), citing *Harris v. State*, 184 Ga. 382, 392 (191 SE 439)), the mere fact that conspiracy has been alleged does not require submission of the question to the jury.' *McCulley v. Dunson*, 149 Ga. App. 551 (2) (254 SE2d 877) (1979)." *Sachdeva v. Smith*, 167 Ga. App. 80, 81 (306 SE2d 19) (1983). There is no evidence of record which would authorize a finding that the defendant appellees either positively or tacitly came to a mutual understanding to accomplish an unlawful design.

4. Appellants' maintain that they are entitled to a trial on their claim for damages sustained because Rickenbaker "without rhyme or reason" deprived them of a substantial benefit incident to their tenancy by having a fence placed around his business adjacent to the service station, fencing appellants away from a fuel tank and storage room and thereby requiring them to go an additional 115 feet to get into the rear of the station, and limiting their business to the normal

hours of operation of Rickenbaker's business, which were shorter. Appellants claim that Rickenbaker's actions were wilful and intentional.

"The right of enjoyment of private property being an absolute right of every citizen, every act of another which unlawfully interferes with such enjoyment is a tort for which an action shall lie." OCGA § 51-9-1.[2]

Construing the evidence in the record most favorably for appellants, the trial court erred in granting summary judgment to Rickenbaker. Appellants claimed damages due to a substantial limitation on their right of access, a right which there is evidence to show was part of the property rights leased. There is also evidence that the erection of the fence significantly diminished the time and place of access to areas on which were located fuel and storage used in appellants' business. The question remains whether such alteration constituted an actionable interference with their property right by the owner of the premises.

A tenant is entitled to the maintenance of a means of ingress to, and egress from, the demised property which is necessary to the full enjoyment of the use of the property, although it may not be the only means of access. Moreover, although rights of ingress and egress may not be expressly granted under a lease, they may nevertheless pass under the lease, if they are necessary to the complete enjoyment of the premises for the purpose for which they were rented, and the question of necessity is one of fact. See 51C CJS, Landlord & Tenant, § 295 (1).

Here, even assuming no specific provision in the lease between Jones and the Lewises in regard to the manner and time of access to the fuel and storage, whether reasonable or necessary access was thwarted or interfered with by Rickenbaker would be for the jury to decide. There is evidence that appellants had unlimited access throughout the long period of their tenancy, with each landlord, and that in conversation regarding his purchase of the property, Rickenbaker represented to them that nothing would change, that their tenancy would be just like it was when appellants leased from Texaco originally. There is no evidence that the original lease from Texaco or any subsequent lease restricted the scope of access to this fuel and storage. Though Rickenbaker maintains he made no such representation, the record indicates that there was no reduction in rent; there is

---

[2] E.g., where a party alleges a right of use and possession as tenant of certain premises and a wilful and wanton violation of this right by his landlord even if no actual injury to purse or person is shown, the party may have a cause of action for interference with his enjoyment of the use and possession of the leased premises. See *Ivey v. Davis*, 81 Ga. App. 598 (59 SE2d 256) (1950). Although the Lewises were sublessees of Rickenbaker, the cause of action as stated in the statute is not limited to actions against landlords. The duty belongs to everyone.

evidence that Rickenbaker accepted the same amount of rent as had been paid before he became owner. There is also evidence that, although appellants continued to pay that amount after the fence went up, they protested the change in access steadfastly from the time they first learned of the erection of the fence. Whether they acquiesced would at least be a jury question.

The scope of the right of access here, as part of the bundle of rights incident to the tenancy because of necessity of access in order to fully operate their business, is a question of fact material to the disposition of appellants' claim which, based upon the record, must be resolved by the trier of fact.

In their brief, appellants also argue that there was an intentional, malicious and wrongful interference with and harm to their business by virtue of the erection of the fence. While such circumstances can give rise to a cause of action under OCGA § 51-9-1 (see *Wise v. State Bd. for Examination, Qualification & Registration of Architects*, 247 Ga. 206 (274 SE2d 544) (1981)), appellants did not allege this basis for their cause of action in their complaint nor did they amend their pleadings to include it. Therefore, we cannot properly consider such claim on appeal. See *Whitaker v. Trust Co. of Columbus, Lowe v. Royal Crown Cola Co.*, and *Sowell v. Douglas County Elec. Membership Corp.*, supra, Division 2.

*Judgment affirmed in part and reversed in part. McMurray, P. J., Carley, Pope and Benham, JJ., concur. Banke, C. J., Deen, P. J., Birdsong, P. J., and Sognier, J., dissent.*

BIRDSONG, Presiding Judge, dissenting.

Though I am in complete accord with the first three divisions of the majority opinion, I am constrained to enter my dissent to Division 4 and its conclusion that questions of fact remain as to whether damages were caused by the erection of a fence by Rickenbaker around an adjacent and contiguous piece of property to that of the service station which was leased orally and month-to-month by Lewis and his son.

A plaintiff-movant for summary judgment has the burden of showing the absence of any genuine issues of material facts which under applicable principles of substantive law entitle him to a judgment as a matter of law. *Raven v. Dodd's Auto Sales & Service*, 117 Ga. App. 416 (160 SE2d 633). On the other hand, a defendant is entitled to a summary judgment if the undisputed facts as disclosed by the pleadings and evidence negate at least one essential element entitling the plaintiff to recovery. *Continental Assur. Co. v. Rothell*, 121 Ga. App. 868 (2) (176 SE2d 259).

In this case, it is undisputed that Lewis had an oral month-to-month sublease from Jones. The lease was terminated between the

owner Rickenbaker and Jones on March 6, 1981. Also in March 1981, Jones notified the Lewises that their oral lease likewise was terminated and the premises had to be vacated effective April 30, 1981. Thus, there is no dispute that appropriate notice was furnished and the Lewises did in fact vacate on the required date.

The facts also are undisputed that Rickenbaker was the fee owner of the property contiguous and to the rear of the service station under oral lease by the Lewises. The facts show that early in September 1980, Rickenbaker fenced his property up to the line of the service station property. There is no dispute that Rickenbaker had an absolute and legal right to fence his own property. Thereafter, there appears no dispute that though Lewis sought permission to have a gate closer to the service station property line and to have unlimited access to the back entrance of the service station as well as a storage shed, Rickenbaker, for security purposes, required access by only one gate to the property fenced which was at the far side from the rear line of the service station and thus limited access to the rear lot during Rickenbaker's business hours (which were of a much shorter duration than that of the service station). The record, by its silence, shows that between September 1980 and April 1981, a period of eight months, Lewis and son accepted the limitations placed upon their use of the rear entrance to the station without objection and continued to pay their monthly rent. It appears they continued to exercise completely free and unfettered use of the entire service station under lease. It was only after their oral, month-to-month lease had been terminated in March 1981, that Lewis and son filed the complaint in April complaining they had suffered loss of enjoyment of the full use of the leased service station and raised allegations of damages.

An oral lease, like a written lease, is a contract between the lessor and lessee. When parties depart from the terms of the agreement and pay and receive money under the departure, before either can recover for a failure to adhere to the terms of the original agreement, reasonable notice must be given the other of the intention to insist upon and to pursue the original terms of the understanding. Until such notice, the departure is a quasi new agreement. *Verner v. McLarty*, 213 Ga. 472, 475 (99 SE2d 890). Though there were tentative negotiations or requests, there is nothing in this record to show that Lewis and his son insisted on the degree of access enjoyed prior to the construction of the fence or gave any kind of notice either to Jones or Rickenbaker that they insisted upon adherence to the original agreement. To the contrary, there is unrebutted evidence they paid without objection the lease payments. Thus, the trial court was required to find that the terms of the agreement had been modified and both parties had assented to the modification by making and accepting payments under the modified lease. See *Ryder Truck Lines v. Scott*, 129 Ga. App. 871

(201 SE2d 672). The Lewises thus were estopped to deny the modification of the contract when the first and only complaint was voiced through the medium of their April 1981 complaint, a month after even the modified contract had been terminated. See *Hart v. Trust Co. of Columbus*, 154 Ga. App. 329 (268 SE2d 384); *Green v. Ford Motor Credit Co.*, 146 Ga. App. 531 (246 SE2d 721). When their complaint was filed, there was no contract which either Jones or Rickenbaker could breach.

Lastly, it must be concluded that there can be no liability for interference with a contractual relationship where the alleged interference is caused by the exercise of an absolute right. *Schaeffer v. King*, 223 Ga. 468, 470 (155 SE2d 815); *Rebel Sales Co. v. McDuffie & Assoc.*, 142 Ga. App. 693 (237 SE2d 6). It is axiomatic that where the judgment of the trial court is proper and legal for any reason, it should be affirmed. *Argonaut Ins. Co. v. Cline*, 138 Ga. App. 778, 782 (4) (227 SE2d 405).

As was said by Justice Weltner of our Supreme Court in his concurring opinion in *Henderson Elec. Co. v. IBEW*, 250 Ga. 265, 269 (297 SE2d 268), in the event that the actions of defendants are lawful, "motive becomes immaterial, and evil design, were it established by the evidence, cannot make unlawful that which is plainly within the bounds of the law." Appellee had fee simple title to the property and he had a right to fence his property as he did.

Rickenbaker, Jones and Byrom, having negated at least one essential element necessary to allow a recovery based upon a breach of the lease, I would conclude the trial court properly granted summary judgment. Accordingly, I would affirm the judgment.

I respectfully dissent. I am authorized to state that Chief Judge Banke, Presiding Judge Deen, and Judge Sognier join this dissent.

DECIDED MARCH 15, 1985 —
REHEARING DENIED MARCH 29, 1985 —

*Scott Walters, Jr.*, for appellants.
*Willis G. Haugen, J. Littleton Glover, Jr., A. Mitchell Powell, Jr.*, for appellees.