A93A1470. DIXIE DINERS ATLANTA, INC. et al. v. GWINNETT FEDERAL BANK, FSB.

(439 SE2d 53)

BEASLEY, Presiding Judge.

This is a suit on a promissory note. Defendants, the borrower corporation and two individual guarantors, appeal from the trial court's grant of final summary judgment to the plaintiff bank on its main claim and on defendants' counterclaim.

On January 8, 1990, Dixie Diners Atlanta, Inc. d/b/a Uncle Sam's Diners executed a promissory note in favor of Gwinnett Federal Savings & Loan Association, later known as Gwinnett Federal Bank, FSB, for a loan in the principal amount of $60,025. On the same day, Jones and Crawford each executed an individual guaranty of the loan. Dixie Diners received the $60,025. No payments were ever made on the loan. On June 21, 1991, Gwinnett Federal made demand on Dixie Diners, Jones, and Crawford for $69,341.72, the total principal and interest due under the note as of May 31, 1991. The money was not paid and the present action against Dixie Diners, Jones, and Crawford was filed on August 1, for the amount of the demand plus attorney fees in an amount to be proven at trial.

The three defendants counterclaimed, alleging in pertinent part as set out in the next three paragraphs:

The promissory note and guarantees were part of a larger guaranteed loan arrangement involving Gwinnett Federal, the defendants, and the U. S. Small Business Administration (SBA). On August 31, 1988, The Merchant Bank of Atlanta made a $500,000 SBA guaranteed loan to Dixie Diners for a restaurant venture. This loan was guaranteed by Crawford and Jones. In the transaction, the defendants dealt with Merchant Bank's agent, Barnes. In their "zeal" to make the loan and obtain the SBA guarantee, Merchant Bank and Barnes negligently failed to adhere to "prudent lending practices and basic loan principles" required by certain agreements executed in connection with the SBA loan and specific federal statutes and regulations.

Approximately three months into the life of the SBA loan, Merchant Bank transferred the loan "without recourse" to Gwinnett Federal, prompted by Barnes' move to Gwinnett Federal. Barnes continued in charge of the loan, with the "negligent and imprudent loan management practices" continuing. Defendants paid approximately $12,000 to have the loan transferred from Merchant Bank to Gwinnett Federal. After the transfer, Barnes continued to make disbursements under the SBA loan even though he had full knowledge of adverse changes in the loan's status. Due to Gwinnett Federal and Barnes' mismanagement of the loan and their failure to provide defendants with the contemplated "aid, counsel, assist[ance], and protect[ion]," the restaurant was not opened for almost a year after the

SBA loan was consummated.

Gwinnett Federal made the loan at issue to cover cost overruns, unanticipated site improvement costs, and acute shortage of operating capital, all of the problems being directly attributable to the negligence of Barnes and Gwinnett Federal. SBA apparently was not notified of the loan at issue. Because of inadequate capital and management problems, the restaurant closed after one year of operation and six months after the present loan was made. Defendants were entitled to recover against Gwinnett Federal for ordinary negligence and negligence per se in that the bank violated various statutory, regulatory, and contractual standards of care.

The three defendants also raised defenses: the bank was estopped to collect the balance on the note because the note was unenforceable, as the circumstances of its creation rendered it illegal and void as against public policy; the bank was estopped to collect the balance on the note because of representations made by the bank to defendants at the time the note was made in the context of a "confidential" relationship between defendants and the bank's agent Barnes, namely that such debt would not be separately collected but would be a part of the overall SBA loan arrangement; the bank treated both loans as a "package" and released the individual guarantors by its repeated offers of "*de facto* extensions" to Dixie Diners on both debts; defendants had a right of recoupment against the bank for damages suffered from its alleged negligence.

In challenging the grant of summary judgment, defendants assert six separate enumerations of error. The common assertion is that the court improperly rejected their affirmative defenses and counterclaim. The reason given is that it erroneously accepted the bank's theory that the affirmative defenses and counterclaim arose out of facts surrounding an earlier and separate SBA loan and did not constitute a legally cognizable defense to the suit on the note at issue. Defendants also complain that "[n]otwithstanding the non-applicability of OCGA § 9-11-52 (a) to motions for summary judgment," the trial court erred "in failing to articulate for the benefit of the Defendants any meaningful explanation for why their defenses and [c]ounterclaim failed to raise any material issue of disputed fact," and by its silence, the court contravened the 1983 Georgia Constitution, Art. I, Sec. I, Par. I and Art. I, Sec. I, Par. XI.

1. Defendants fail to show how the lack of elaboration in the court's ruling contravenes the due process and jury trial provisions of the state constitution. The constitution mandates the adoption of court rules which aim to achieve "the speedy, efficient, and inexpensive resolution of disputes and prosecutions." 1983 Ga. Const., Art. VI, Sec. IX, Par. I. The law itself, in OCGA § 9-11-56, authorizes summary judgment, when appropriate, as a means short of jury trial

to effect the constitutional goals. The Civil Practice Act targets the same goals by requiring that they be construed "to secure the just, speedy, and inexpensive determination of every action." OCGA § 9-11-1.

In keeping with this objective, and because an appellate court must review summary judgment de novo, "[t]he trial court is not required to make express findings of fact and conclusions of law in ruling on motions for summary judgment [pursuant to OCGA § 9-11-56], although they are helpful to the appellate courts and instructive to the parties. [Cits.] . . . On appeals from grants of summary judgment, it is this court's function to examine the record and determine whether the allegations of the pleadings have been pierced so that no genuine issue of material fact remains. [Cit.]" *Lewis v. Rickenbaker*, 174 Ga. App. 371, 372 (330 SE2d 140) (1985). So we must move on, although unenlightened by the trial court's analysis.

2. The record supported the bank's theory of the case.

The evidence is without dispute that Gwinnett Federal made out a prima facie right to judgment on the note and that the individual defendants were liable for payment of the note as guarantors thereof. See OCGA § 11-3-307. The burden shifted to defendants to establish an affirmative defense. *Jay Gleason Advertising Svc. v. Gleason*, 193 Ga. App. 445 (1) (388 SE2d 43) (1989). This they failed to do.

The claims of oral agreement by the bank through its agent Barnes that the loan at issue would become part of the SBA transaction and would not be collected separately, or that the individual guarantors on the note would not be pursued because of extensions granted the corporate debtor, do not establish a defense of release or discharge or any estoppel by the bank in attempting to collect on the debt from the three defendants. Even if such oral agreements were reached, the parol evidence rule precludes their enforcement. *Richards v. First Union Nat. Bank of Ga.*, 199 Ga. App. 636, 637 (405 SE2d 705) (1991).

That rule was not avoided nor did an estoppel arise by virtue of an alleged "confidential" relationship between defendants and the bank through its agent, Barnes, existing prior to the time of the second loan. See *Richards*, supra at 637; *Armstrong v. California Fed. Savings &c. Assn.*, 192 Ga. App. 508, 510 (3) (385 SE2d 113) (1989). At most, defendants' evidence in this regard showed that Barnes had experience, knowledge, and expertise in the area of SBA loans, that defendants did not, and consequently that they relied on Barnes in establishing and pursuing the SBA loan. " 'There is no confidential relationship between a bank and its customers merely because the customer had advised with, relied upon, and trusted the bankers in the past. [Cit.]' . . . There is, moreover, *particularly* no confidential relationship between lender and borrower . . . for they are creditor

and debtor with clearly opposite interests. . . . [Cit.]" *Pardue v. Bankers First Fed. Savings &c. Assn.*, 175 Ga. App. 814, 815 (334 SE2d 926) (1985). Furthermore, defendants offered no evidence that Barnes exercised a "controlling influence" over their wills, conduct, and interests such as would render the relationship one of confidence. See OCGA § 23-2-58; compare, e.g., *Tigner v. Shearson-Lehman Hutton, Inc.*, 201 Ga. App. 713 (411 SE2d 800) (1991).

Lastly, there was no evidence of negligence so as to sustain the defenses of estoppel or recoupment or to save defendants' counterclaim. The allegations of negligence leading to the demise of the debtors' business venture flowed from the defendants' characterization of the loan and note at issue as but part and parcel of one SBA financing arrangement. There simply was no admissible evidence to support this position or to counter the bank's evidence that the note sought to be collected was not part of a larger SBA loan.

Summary judgment was properly granted to the bank on both the main claim and on defendants' counterclaim.

*Judgment affirmed. Cooper and Smith, JJ., concur.*

DECIDED NOVEMBER 29, 1993 —
RECONSIDERATION DENIED DECEMBER 14, 1993 —

Action on note. Cobb Superior Court. Before Judge Hicks, Senior Judge.

*George E. Butler II, Dailey, Mattox, Chambliss & Bradley, Michael A. Dailey*, for appellants.

*Webb, Tanner & Powell, Anthony O. L. Powell, R. Jack Wilson,* for appellee.