[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-11643
Non-Argument Calendar
_____

D. C. Docket No. 2:12-cv-00162-RWS

ZIAD ABDULLAHI,

Plaintiff-Appellant,

versus

BANK OF AMERICA, NA,
BAC HOME LOANS, et al.

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(November 20, 2013)

Before MARTIN, FAY, and EDMONDSON, Circuit Judges.

PER CURIAM:

Ziad Abdullahi appeals the district court's dismissal of his suit for wrongful foreclosure, promissory estoppel, and constructive fraud. [1]  Abdullahi's complaint named as defendants Bank of America, NA ("BOA"), Federal Home Loan Mortgage, Corp., a/k/a Freddie Mac, and Pendergast & Associates, P.C. ("Defendants").[2]  No reversible error has been shown; we affirm.

This dispute arose out of the non-judicial foreclosure sale of Abdullahi's property in Cumming, Georgia ("Property").  In 2005, Abdullahi obtained a loan which was secured by a Security Deed on the Property.  The Security Deed granted to Mortgage Electronic Registration Systems, Inc. ("MERS"), and to MERS's successors and assigns, the power of sale in the event of Abdullahi's default under the note.  The Security Deed was later transferred and assigned to BAC Home Loans Servicing, LLC.  BOA then became the rightful holder of the Security Deed when it merged with BAC.  See O.C.G.A. § 14-2-1106(a)(2) (providing that the

---

[1] Because Abdullahi does not challenge the district court's dismissal of his claims for quiet title, violation of the Fair Debt Collection Practices Act, and for injunctive relief, these claims are abandoned.  See Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004). For the same reason, Abdullahi has also abandoned his motion for leave to amend his first amended complaint.

[2] Abdullahi's complaint also named as a defendant BAC Home Loans Servicing, LP, which has since merged with BOA.

2

contract rights of each party to a merger are vested automatically in the surviving corporation).

After Abdullahi failed to make one or more payments required under the 2005 note, BOA -- through its lawyers at Pendergast -- began foreclosure proceedings on the Property. While Abdullahi was in the process of applying for a modification of his loan, the Property was foreclosed on. Ownership of the Property was later transferred to Freddie Mac.

Abdullahi filed suit against Defendants in state court, seeking monetary damages and rescission of the foreclosure. The suit was removed to federal court. The district court granted Defendants' motions to dismiss the complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6).

We review de novo the district court's dismissal of a case under Rule 12(b)(6), "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003). To survive dismissal for failure to state a claim, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (quotations omitted).

3

Wrongful Foreclosure

On appeal, Abdullahi challenges the district court's dismissal of his claim for wrongful foreclosure.[3] In Georgia, "a plaintiff asserting a claim of wrongful foreclosure [must] establish a legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it sustained, and damages." Heritage Creek Dev. Corp. v. Colonial Bank, 601 S.E.2d 842, 844 (Ga. Ct. App. 2004).

Because BOA was the only "foreclosing party" and because Abdullahi failed to allege that either Freddie Mac or Pendergast owed him a specific legal duty, the district court dismissed properly Abdullahi's claim for wrongful foreclosure against Freddie Mac and Pendergast.

Abdullahi has also not alleged sufficiently that BOA breached a legal duty or that such a breach caused his injuries. On the day of the foreclosure, BOA was the rightful holder of the Security Deed. The Security Deed grants explicitly the "successors and assigns of MERS" the power of sale and "the right to foreclose and sell the Property" in the event of Abdullahi's default. Because Abdullahi

---

[3] In support of his wrongful foreclosure claim, Abdullahi raises here two arguments that were not raised in the district court: (1) that he filed for Chapter 13 bankruptcy on the day of the foreclosure sale and, thus, the foreclosure sale was prohibited by an automatic stay; and (2) that the foreclosure newspaper advertisements were defective. We do not review issues raised for the first time on appeal. See Access Now, Inc., 385 F.3d at 1331.

4

defaulted on the loan, BOA was entitled to foreclose on the Property.  BOA breached no duty to Abdullahi.  And Abdullahi's complained-of injuries were caused proximately by Abdullahi's own failure to make loan payments.

On appeal, Abdullahi contends that the foreclosure notice letter[4] violated O.C.G.A. § 44-14-162.2 because it failed to identify the secured creditor.  This argument differs from Abdullahi's complaint, in which he alleged only that the foreclosure notice letter failed to identify the owner of the loan.  In any event, the Georgia Supreme Court has concluded that section 44-14-162.2 does not categorically require the foreclosure notice to name either the secured creditor or the note holder.  See You v. JP Morgan Chase Bank, N.A., 743 S.E.2d 428, 433-34 (Ga. 2013).  Instead, the notice must name "the individual or entity who shall have full authority to negotiate, amend, and modify all terms of the mortgage with the debtor."  Because Abdullahi's complaint alleged only that the foreclosure letter failed to identify the owner of the loan -- and did not allege that the owner of the loan was in fact the entity with full authority to negotiate, amend, and modify the mortgage -- Abdullahi has not alleged sufficiently a violation of Georgia law.[5]

---

[4] Abdullahi received three notice letters.  Because he does not challenge expressly the district court's dismissal of his claims for attempted wrongful foreclosure based on the first two foreclosure notices, he has abandoned that argument.  See Access Now, Inc., 385 F.3d at 1330.

[5] Abdullahi also argues that the district court misconstrued his argument about the enforceability of the promissory note.  To preserve an issue for appeal, a party "must first clearly present it to the district court . . . in such a way as to afford the district court an opportunity to recognize and rule on it."  Juris v. Inamed Corp., 685 F.3d 1294, 1325 (11th Cir. 2012).  Nowhere in his

Promissory Estoppel


Abdullahi argues that the district court erred in dismissing his claim for promissory estoppel based on BOA's alleged promise that the foreclosure sale had been rescinded.  To state a claim for promissory estoppel under Georgia law, Abdullahi must allege "that (1) defendant made certain promises, (2) defendant should have expected that plaintiffs would rely on such promises, (3) the plaintiffs did in fact rely on such promises to their detriment, and (4) injustice can be avoided only by enforcement of the promise." Canterbury Forest Ass'n v. Collins, 532 S.E.2d 736, 739 (Ga. Ct. App. 2000).  "Promissory estoppel cannot be applied unless the promisee reasonably relied on the promise." Gerdes v. Russell Rowe Commc'ns, 502 S.E.2d 352, 354 (Ga. Ct. App. 1998).

Abdullahi's promissory estoppel claim is based on these statements made by BOA employee Stephanie Beal: [6] (1) Beal was told that the Property had been sold, but had been told that it was "possible" to have the foreclosure rescinded; (2) that her supervisor and the underwriter had put in "escalated requests" to have the foreclosure rescinded; (3) that she had been told that the foreclosure had been

complaint does Abdullahi raise clearly the issue he now asserts on appeal: that the promissory note was unenforceable because it was not delivered properly to the lender.  Because this argument was presented for the first time on appeal, it is waived. See id.

[6] Because Abdullahi makes no allegations about promises made by Freddie Mac or by Pendergast, he stated no claim for promissory estoppel against those defendants.

6

rescinded; and (4) that BOA's computer system still showed that the Property had been foreclosed on and that it may take time for the system to be updated.

Nothing in these statements constituted a promise by BOA to rescind the foreclosure sale. Instead, Beal was merely relaying what she understood the status of Abdullahi's foreclosure proceedings to be.

Even if Beal's statements could be construed as a promise, Abdullahi has not alleged sufficiently that his reliance on those statements was reasonable. First, Beal -- a Home Servicing Specialist in BOA's Loan Modification Department -- told Abdullahi expressly that she was "not in the foreclosure department" and had no "updated status information" on foreclosures. Thus, Abdullahi had no good reason to believe that Beal had authority to make promises about his foreclosure proceedings.

Second, the Security Deed provided expressly that "[e]xtension of the time for payment or modification of amortization of the sums secured by this Security Instrument . . . shall not operate to release the liability of Borrower . . . ." The Security Deed also described the circumstances under which Abdullahi could reinstate after acceleration of his loan payments and made clear that Abdullahi's failure to cure a default authorized BOA to invoke its power of sale. Based on the Security Deed's "clear and unambiguous" language, Abdullahi could not rely reasonably on Beal's representations about the possibility of a rescission. See

7

Gerdes, 502 S.E.2d at 355 (rejecting a promissory estoppel claim when the "clear and unambiguous provision [in an employment contract] served to place appellant on due notice that he could not thereafter reasonably rely upon any words or other course of dealing to his inducement, other than a modification agreement actually reduced to writing.").

Constructive Fraud

To state a claim for constructive fraud under Georgia law, Abdullahi must allege, among other things, the existence of a confidential relationship between himself and Defendants. See Delta Diversified, Inc. v. Citizens & S. Nat'l Bank, 320 S.E.2d 767, 776 (Ga. Ct. App. 1984). A confidential relationship exists "where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another . . . ." First Union Nat'l Bank v. Gurley, 431 S.E.2d 379, 381 (Ga. Ct. App. 1993). "The mere fact that one reposes trust and confidence in another does not create a confidential relationship." Id. Abdullahi has the burden of showing the existence of a confidential relationship. See Jerry Dickerson Presents, Inc. v. Concert/Southern Chastain Promotions, 579 S.E.2d 761, 770 (Ga. Ct. App. 2003).

Abdullahi has failed to allege sufficiently the existence of a confidential relationship with Defendants.  Georgia courts have said that "no confidential relationship [exists] between a bank and its customers borrowing funds."  Delta Diversified, Inc., 320 S.E.2d at 776; see also Dixie Diners Atlanta v. Gwinnett Fed. Bank FSB, 439 S.E.2d 53, 56 (Ga. Ct. App. 1993) ("There is, moreover, *particularly* no confidential relationship between lender and borrower . . . for they are creditor and debtor with clearly opposite interests . . . .").  And Abdullahi cannot show that he had a confidential relationship with Pendergast, when Pendergast was representing BOA in the foreclosure proceedings.

AFFIRMED.